Charles R. Kimes and Gloria F. Kimes v. Commissioner.
Kimes v. Commissioner
Docket No. 79691.
United States Tax Court
T.C. Memo 1961-303; 1961 Tax Ct. Memo LEXIS 46; 20 T.C.M. (CCH) 1561; T.C.M. (RIA) 61303; October 31, 1961
*46 Held, that petitioners' interest in a certain motel was held by them primarily for sale to customers in the ordinary course of a business of constructing and selling motels; and that the gain which they derived from an installment sale of such interest was ordinary income. Held, further, that a loss incurred by the principal petitioner, resulting from worthlessness of an advancement made to a corporation, was a loss from a nonbusiness bad debt within the meaning of section 166(d) of the 1954 Code; and that the same is therefore to be treated as a shortterm capital loss. Cyrus B. King, Esq., Mills Bldg., San Francisco, Calif., for the petitioners. Donald G. Daiker, Esq., and Aaron S. Resnik, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent determined a deficiency in income tax against petitioners for the calendar year 1955 in the amount of $3,705.16. The issues presented for decision are: 1. Whether gain realized by petitioners from the sale of their interest in a certain motel represents gain from the sale of a capital asset; or whether it constitutes ordinary income from the sale of property held primarily for sale to customers *47 in the ordinary course of a trade or business within the meaning of section 1221(1) of the Internal Revenue Code of 1954. [1]
2. Whether a loss incurred by the principal petitioner in 1955, resulting from worthlessness of an advancement made to a corporation, constitutes a loss in respect of a business bad debt, which would be deductible in full; or whether it constitutes a loss from a nonbusiness bad debt, which would be treated as a short-term capital loss, under section 166. Findings of Fact Some of the facts were stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by reference. Petitioners are husband and wife, residing in Salinas, California. They filed a joint income tax return for the calendar year 1955, with the district director of internal revenue at San Francisco, California. The term petitioner, in the singular, will have reference herein to the husband. Petitioner graduated from dental school in 1949, and in the same year, he was licensed to practice dentistry in California. He has been continuously engaged, since that time, in the active practice of *48 this profession in Salinas, California. Motel Sale On or about August 1, 1953, petitioner and his brother, Kenneth K. Kimes, together with their wives, acquired certain real property in Salinas; and on August 26, 1953, all of said parties entered into a partnership agreement, in which petitioner and his wife had a 50 percent interest, and under the terms of which the partners agreed to construct and operate on said property, a motel to be called the Sandstone Motel. Shortly thereafter, the partnership commenced construction of the motel; and construction was completed on about March 1, 1954. The Sandstone was located in downtown Salinas, on John Street which was then part of a main highway through California. At the time petitioner entered into the partnership agreement, he was aware that a new freeway, then under construction, would bypass the downtown business area of Salinas. Petitioner and his partners operated the Sandstone at a profit for about 1 year; and then, on about April 1, 1955, they sold the same to Walter Doherty for $165,000. This price was represented by an initial payment of $37,214.21, and an installment note for the balance. Petitioner and his wife received 50 *49 percent of the initial payment and a 50 percent interest in the installment note. Prior to said sale, the partners did not list the Sandstone with any real estate broker; nor did they advertise it for sale. Doherty learned that the property was for sale from persons in the motel field who were other than petitioner and his partners. Prior to the construction of the Sandstone Motel, petitioner had owned and sold interests in two other motels: The Westerner Motel in Monterey, California; and the Californian Motel in Salinas. The Westerner was constructed in 1952 by a partnership of the petitioner, his brother, and his mother-in-law; and it was sold before construction was completed. The Californian was constructed in 1952 by a partnership of the petitioner and his brother; and it was operated for less than 1 year before its sale. During the period from 1952 through 1960, the petitioner, acting either as an individual or as a partner or as a shareholder of a corporation, actively participated in the construction of approximately 20 motels, including the above-mentioned Westerner, Californian, and Sandstone; and in all but one case, these were sold within a period of about 1 year or less *50 from the time when construction was commenced - the sole exception being a motel which was under construction at Livermore, California, and as to which complete facts are not here available. A partial list of said motels constructed and sold, in which petitioner had an interest, is as follows: Name
Location
Constructed
Sold
Ownership & Interest
Westerner
Monterey
1952
1952
Partnership: Charles R. Kimes 33 1/3%
Kenneth K. Kimes 33 1/3%
Melinda C. Waters 33 1/3%
Californian
Salinas
1952
1953
Partnership: Charles R. Kimes 50%
Kenneth K. Kimes 50%
Sandstone
Salinas
1954
1955
Partnership: Charles R. Kimes 50%
Kenneth K. Kimes 50%
Town House
Tracy
1955
1955
Kimes Motels Co.[1]
Tracy
Tracy
1955
1955
Kimes Motels Co.[1]
Town House
Livermore
1955
1956
Charles R. Kimes 100%
Westerner
Stockton
1955-56
1956
Kimes Motels Co.[1]
Russel 'N Pines
Lake Tahoe
1955-56
1955-56
Kimes Tahoe Motels, Inc. [2]
Town House
Stockton
1956
1956
Kimes Motels Co.[1]
Town House
Chico
1956
1956
Kimes Town House, Inc. [3]
Town House
Paso Robles
1957
1957
Paso Robles Town House Co. [4]
Villa
Monterey
1957
1958
Villa Motel Co.[5]
Villa
Santa Maria
1958-59
1958-59
Kimes Santa Maria Co. [6]
Lake of the Sky
Lake Tahoe
1959
1959
Kimes Motel Sales, Inc. [7]
(Unnamed)
Livermore
Under construction
Petitioner had an interest
on 7/1/60
but nature thereof is not
disclosed.
*51 During the year 1955 in which the Sandstone Motel was sold, petitioner and his wife made numerous trips for the purpose of examining potential sites for the construction of new motels; and they deducted the expenses of these trips, on their income tax return, as business expenses. *52 On some of the sites thus examined, either the petitioner individually, or partnerships of which he was a member, or corporations in which he had a substantial interest, later constructed motels. In their income tax return for 1955, petitioner and his wife reported their share of the partnership's receipts from the installment sale of the Sandstone Motel; and they treated the gain therefrom as long-term capital gain. Respondent, in his deficiency notice for said year, determined that said gain constituted ordinary income from the sale of property held by petitioners primarily for sale to customers in the ordinary course of a trade or business. Ultimate Finding Petitioners, at the time of the sale of the Sandstone Motel, held their interest therein primarily for sale to customers in the ordinary course of a business of constructing and selling motels. Loss Sometime after April 1954, petitioner made advancements of approximately $15,000 to a corporation named Kimes-Likas Corporation. A portion of these advancements was repaid; but petitioner realized a loss in 1955 on the unpaid balance of $2,950. Petitioner and his wife, in their income tax return for 1955, reported said loss; treated *53 the same as having been incurred in respect of a business bad debt; and deducted it in full. Respondent, in his deficiency notice for said year, determined that the loss resulted from a nonbusiness bad debt, and should be treated as a short-term capital loss, under section 166(d)(1)(B). Opinion Motel Sale The first question for decision is: Whether the 50 percent interest of petitioner and his wife in the Sandstone Motel is excludible from classification as a "capital asset" within the meaning of section 1221(1). [2] *54 Respondent contends that said interest is so excludible, on the ground that petitioner and his wife held the same primarily for sale to customers in the ordinary course of a business. If such property interest was not so held, then the gain derived therefrom was properly reported as capital gain; but if it was held for such purpose, then the gain is taxable as ordinary income, as determined by the respondent. The questions of what constitutes a trade or business and when property is or is not held for sale to customers, are questions of fact. The courts have laid down certain guides or factors to be considered in answering these questions; but, in the last analysis, each case must be determined on its own specific facts. Stockton Harbor Industrial Co. v. Commissioner, 216 F. 2d 638 (C.A. 9, 1954), affirming a Memorandum Opinion of this Court. In our view, the situation here presented was in substance as follows: Petitioner, a practicing dentist, sought an additional source of income. To accomplish this, he in 1952 entered into a partnership for the construction and operation of a motel (the Westerner in Monterey); but thereafter, before the construction had been completed, the partnership sold the property at a profit. Having found this first motel sale profitable, petitioner proceeded to enter into a series of approximately 19 other motel ventures, over a period of some 8 years. In each of these ventures, the petitioner, acting either individually or as a partner or as a shareholder in a corporation, actively participated in *55 the construction of a motel and in the operation thereof, if necessary, until it could be sold. Petitioner conceded during the course of his testimony herein, that he was then engaged in a business of constructing motels primarily for sale to customers in the ordinary course of such business; but he contended that his entry into this business did not occur until after the particular sale here involved. We can not agree with such contention of petitioner, in the light of the facts revealed and established by the record herein. It is immaterial that petitioner was a practicing dentist; for it is well settled that an individual may engage in two or more businesses at the same time. J. Roland Brady, 25 T.C. 682 (1955); C. E. Mauldin, 16 T.C. 698 (1951), affd. 195 F. 2d 714 (C.A. 10, 1952). Nor is it necessary to establish the existence of extensive sales promotion or advertising; for "Advertising is merely a means for finding customers; and where an active market exists and potential customers are known, the employment of conventional methods of advertising may not be essential." J. Roland Brady, supra.
It is significant however, in determining whether a particular property was *56 held for sale to customers in the ordinary course of a business, to observe the frequency and continuity of the taxpayer's sales of similar property, both prior to, during, and subsequent to the year involved; for the particular sale may be either the first or last in a business sales program, and viewing it apart from its setting may be misleading. Thus, while petitioner's construction and sale activities in years subsequent to 1955 are not involved in this proceeding, they are relevant and may properly be here considered for the purpose above mentioned. Ehrman v. Commissioner, 120 F. 2d 607, at 610 (C.A. 9, 1941), affirming 41 B.T.A. 652 (1940), certiorari denied 314 U.S. 668. See also Solly K. Frankenstein, 31 T.C. 431 (1958), affd. 272 F. 2d 135 (C.A. 7, 1959), certiorari denied 362 U.S. 918; Lockhart v. Commissioner, 258 F. 2d 343 (C.A. 3, 1958), affirming on this point a Memorandum Opinion of this Court. Also, in considering frequency of sale transactions, the character of the particular type of property involved must be kept in mind; because motels, for example, would not generally be sold with the same frequency as lots in a subdivision. In the same year that petitioner *57 sold the Sandstone Motel, he was extensively engaged in seeking out potential locations for other motels, and also in building several motels which were sold either during or shortly after their construction. Of the 15 motels previously listed in our Findings of Fact, 5 were under construction in 1955. The petitioner, while explaining during the course of the trial his 1955 diary entries, said: "I did a lot of other things that I didn't put down here. This was my crude way of doing it, was to investigate motel properties." As we have hereinbefore found, the purpose of said investigations was to seek out new locations for the construction of motels; and the travel expenses incurred on the investigating trips were deducted by petitioners as business expenses. After considering all the evidence and after having heard and weighed the testimony of all witnesses, including petitioner, we are convinced and have hereinabove found as an ultimate fact, that petitioner and his wife held their interest in the Sandstone Motel primarily for sale to customers in the ordinary course of a business of constructing and selling motels. Accordingly, we hold that the petitioners' gain here involved, constitutes *58 ordinary income. We sustain the respondent on this issue. Loss The second issue is whether petitioner's loss on the unrepaid advances to the Kimes-Likas Corporation was incurred on a business bad debt, or on a nonbusiness bad debt as defined in section 166(d)(2). Respondent determined that the loss was incurred on a nonbusiness bad debt. The burden was upon the petitioner to prove respondent's determination erroneous; but he failed to carry this burden. He did not present any evidence which either establishes or tends to establish that the worthless debt was created or acquired in business, or that the loss therefrom was sustained in a business, within the meaning of section 166(d)(2). We therefore decide this issue for respondent. Decision will be entered for the respondent. Footnotes
1. All section references herein are to the 1954 Internal Revenue Code↩.
1. A partnership in which petitioner owned a 25 percent interest. The other partners were his mother-in-law, his sister, and his brother, Kenneth Kimes. ↩
2. A corporation wholly owned by petitioner. ↩
3. A corporation in which petitioner owned a 25 percent interest. The other shareholders were his mother-in-law, his mother and his sister. ↩
4. A partnership in which Charles R. Kimes, Inc. (a corporation wholly owned by Charles R. Kimes) owned a 50 percent interest. The other partners were his mother and his sister. ↩
5. A partnership in which petitioner owned a 50 percent interest. The other partners were his mother-in-law and his brother, Archie Kimes. ↩
6. A partnership in which petitioner owned a 25 percent interest. The other partners were his mother-in-law, his mother, and his sister. ↩
7. A corporation in which petitioner owned a 47 percent interest. The other shareholders were his brother, Kenneth Kimes, and Ralph Thompson.↩
2. SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (1) * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.