Alphonse L. Babin, Sr., and Mildred A. Babin v. Commissioner.
Babin v. Commissioner
Docket No. 75222.
United States Tax Court
T.C. Memo 1962-177; 1962 Tax Ct. Memo LEXIS 136; 21 T.C.M. (CCH) 979; T.C.M. (RIA) 62177; July 25, 1962
*136 Held, petitioners' gains on sales of lots and real estate during the taxable years 1952, 1953, and 1954, and collections from sales made in prior years are taxable as ordinary income and not as capital gain. Regarding four so-called major transactions occurring during the taxable years, held gain was realized on one of the transactions but not on the other three. Held, petitioners are liable for additions to tax for the taxable years under section 294(d)(1)(A), I.R.C. 1939. Held, petitioners failed to prove an alleged partnership loss from a so-called partnership of Babin and Webb in 1954. Held, petitioners are not entitled to additional deductions for expenses or losses in the amounts of $16,050 for 1952, $16,295.46 for 1953, and $1,900 for 1954. William E. Logan, Esq., Gulfport, Miss., for the petitioners. *137 Harold Friedman, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined deficiencies in income tax under the 1939 Code for the calendar years 1952 and 1953, under the 1954 Code for the year 1954, and additions to tax under the 1939 Code as follows: Additions under Section
Year
Deficiency
294(d)(1)(A)
294(d)(2)
1952
$43,026.31
$3,969.72
$2,646.48
1953
27,129.65
2,465.43
1,643.62
1954
16,587.92
1,608.02
1,043.03
Numerous errors were assigned in the petition and also in an amended petition. In the "Answer to Amended Petition" the respondent affirmatively raised several issues and prayed for an increased deficiency for the calendar year 1953 of $1,696 in income tax and $152.28 in additions to the tax for that year. Certain issues have been conceded by both parties and effect will be given to such concessions under Rule 50. The issues remaining to be decided have been consolidated and stated by the respondent in his brief as follows: 1. Did petitioners understate net profit from their real estate business during the years 1952, 1953 and 1954 in the respective *138 amounts of $85,935.97, $59,041.37 and $55,121.75? 2. Are petitioners liable for additions to the tax for the years 1952, 1953 and 1954 under the provisions of sections 294(d)(1)(A) and 294(d)(2)? 3. Are petitioners' gains on sales of lots and real estate during the years 1952, 1953 and 1954 reportable as capital gains or as ordinary income? 4. Are petitioners entitled to a partnership loss from the partnership of Babin and Webb in the amount of $243.51 in 1954 and is a partnership loss allowable? 5. Are the petitioners entitled to additional deductions for ordinary and necessary expenses [or losses] in the amounts of $16,050.00 for 1952, $16,295.46 in 1953 and $1,900.00 for 1954? Findings of Fact Some of the facts were stipulated and they are incorporated herein. Petitioners [1] are individuals with residence at Long Beach, Mississippi (formerly at Baton Rouge, Louisiana). They were married and living together as man and wife during the years in question. The Federal income tax returns for the periods involved were filed with the director of internal revenue for the district of Louisiana in New Orleans. The returns were prepared by Lee Rousse, an accountant. *139 During 1951 petitioner moved to Houston, Texas, for his health. He remained in Houston during the latter part of 1951 and most of 1952. In 1952 he purchased a farm in Long Beach, Mississippi, and petitioners moved there in 1952 and have been living there ever since. (a) Facts Relating to Issues 1 and 3 On February 2, 1946, petitioner purchased a tract of farm land, hereafter sometimes referred to as the Red Oak Subdivision, in East Baton Rouge Parish, Louisiana, from Richard J. Hummell. The tract contained 270.46 acres and was purchased for $15,720. Its location is approximately 5 miles from the downtown section of Baton Rouge. Petitioner purchased the 270.46 acres particularly for farm use and on advice of his doctor who had advised him to get away from the city and away from everything. Later, about 1949, he had difficulty in meeting the payment on some notes. He tried to sell the farm as a whole but could find no buyer. Then in 1949 he decided to cut up a strip of the land into lots and sell the lots so that he could pay off his notes. This strip was subdivided into 59 lots numbered 1 through 59 and was called the Red Oak Subdivision, First Filing. These lots were sold *140 31 in 1950, 16 in 1951, and 12 in 1952. The total sales price of the 12 lots sold in 1952 was $15,100. Red Oak Subdivision, Second Filing, was platted and subdivided into 50 lots numbered 60 through 109, during 1951. These lots were sold, 43 in 1951 and 7 in 1952. The total sales price of the 7 lots sold in 1952 was $5,450. Red Oak Subdivision, Fourth Filing, was platted and subdivided into 32 lots numbered 160 through 191, during 1952. These lots were sold, 26 in 1952, for a total sales price of $41,100, and 6 in 1953, for a total sales price of $8,900. Red Oak Subdivision, Third Filing, was developed in accordance with a contractual arrangement between petitioner, John C. Pearce, and Paul J. LeBlanc, Jr. Pearce and LeBlanc were building contractors who performed development services for petitioner in most of the Red Oak Subdivision. On November 14, 1951, Pearce and LeBlanc, as second parties entered into a written "Contract and Agreement" with petitioner as first party wherein it was agreed that petitioner would transfer to the second parties approximately 32 acres from the Red Oak Subdivision for the second parties to develop into 50 lots numbered 110 through 159 to be known *141 as Red Oak Subdivision, Third Filing. Under the agreement, the second parties were to keep 30 developed lots for their services in doing the development work and transfer back to petitioner 20 lots fully developed and ready for sale by petitioner. Among other things, the contract and agreement provided: (2) * * * It is the intention of the parties hereto that the entire tract herein sold is to be developed by Second Party is to be completed and prepared for sale to the public as a completed real estate development. (3) All of the development shall be completed within a period of five months beginning December 1, 1951 * * *. * * *
(6) Immediately upon acceptance of final plot by Parish Council, Second Party will deed unto First Party * * * (a total of twenty lots). (7) The transfer of the above tract and the retransfer of a portion thereof as above provided for is considered by the parties hereto as the consideration for the obligations assumed hereby by the respective parties, same to be formally transferred at the same time and shall recite (for record purposes only) a cash consideration of * * * ($20,000.00) in CASH. On February 6, 1952, formal deeds were executed *142 by the parties to the above contract and agreement dated November 14, 1951. One deed was from petitioner to Pearce and LeBlanc for 34.72 acres and one deed was from Pearce and LeBlanc to petitioner for 20 lots in Red Oak Subdivision, Third Filing, numbered 125 through 144. Both deeds recited that the respective transfer was for and in consideration of the sum of $20,000. Notwithstanding these recitations, no cash ever changed hands one way or the other between the parties. The recitations were as stated in the November 14, 1951, contract and agreement "for record purposes only." The 20 developed lots received by petitioner from Pearce and LeBlanc were sold by petitioner. Eighteen of the lots were sold during April and May 1952 to nine different individuals for a total sales price of $27,700. The two remaining lots were sold, one in 1953 for $1,900, and one in 1954 for $2,000. Petitioners did not report any gain or loss resulting from the transfer to Pearce and LeBlanc of the raw acreage under the November 14, 1951, contract and agreement or the deed executed on February 6, 1952. The respondent in his determination included in petitioners' income for 1952 by reason of the transfer *143 of raw acreage the difference between $20,000 and the basis as determined by him of $2,083.20, or $17,916.80. Petitioners did, however, report capital gain from the sale of the 20 lots in their returns for 1952, 1953, and 1954. Petitioners realized no gain or loss on the transfer to Pearce and LeBlanc of the raw acreage under the November 14, 1951, contract and agreement or the deed executed on February 6, 1952, herein sometimes referred to as the so-called "$20,000 deal." Paragraph 20 of the stipulation is as follows: 20. If the Court should determine that the transaction is not taxable in 1952, then the basis of the lots for determining gain or loss on their subsequent sale will be either $125.62 or $104.16 per lot, the $104.16 being one-twentieth of the total amount allowed by respondent as basis for the twenty lots in determining gain on the transaction, and the $125.62 being the amount claimed by the petitioners as the proper basis for these lots in their 1952 and 1953 income tax returns. On or about August 13, 1952, petitioners sold approximately 32 acres of land having a cost basis of $2,300 to Red Oak Development Corporation. The sale was for a consideration of $25,000 *144 represented by a note for $25,000, payable in five annual installments of $5,000 bearing interest at a rate of 5 percent. The note was a secured negotiable note. A one-half interest in the note was later transferred to Sam Dupree on or about October 1, 1952, in connection with another transaction hereinafter mentioned. The gain of $22,700 ($25,000 less $2,300) was included in real estate sales for 1952 in the statutory notice of deficiency. On November 5, 1952, Red Oak Development Corporation conveyed 10 lots in North Red Oak Subdivision, First Filing, to petitioner for a consideration of $12,500, which amount was paid by a credit of $12,500 on the mortgage note of August 13, 1952. In 1953, petitioner purchased 7 additional lots in North Red Oak Subdivision, First Filing, from Red Oak Development Corporation for a cash consideration of $12,000, less a discount of $359.07 or a net cash price of $11,640.93. In 1953, petitioner sold 11 lots in North Red Oak Subdivision, First Filing, for a total consideration of $18,095. In 1954, petitioner sold another 11 lots in North Red Oak Subdivision, First Filing, for a total consideration of $21,500. On or about March 25, 1952, Dupree *145 executed a written "Offer to Purchase" an undivided one-half interest in the remaining portion of Red Oak Subdivision consisting of approximately 120 acres for a consideration of $50,000 of which $10,000 was to be paid in cash, $5,000 in a 90-day note, and $35,000 payable in 10 equal annual installments of $3,500 each, together with interest at the rate of 5 percent per annum. At the bottom of the offer petitioner noted his acceptance thus: "I, the undersigned, do hereby accept the above offer on the terms and conditions therein set forth, this 25th day of March, 1952." Notwithstanding this written offer and acceptance referred to in the preceding paragraph, petitioner and Dupree had an oral understanding that if the 120 acres there involved could not be disposed of, petitioner would refund to Dupree all moneys advanced by him and that Dupree would not lose any money on the transaction. As will later appear herein, the transaction did not mature and petitioner made good his assurance to Dupree that Dupree would lose nothing in the deal. Dupree paid the $10,000 in cash referred to in the offer and $3,000 on the $5,000 note. Between March 25, 1952, and October 1, 1952, namely, *146 on or about August 13, 1952, petitioner and Dupree had deeded approximately 19.6 acres out of the 120-acre tract to Red Oak, Inc., in return for all of the latter's capital stock consisting of 300 shares of the par value of $100 per share, the consideration mentioned in the deed being $30,000 represented by the 300 shares of stock. Rhe stock was issued - 147 shares to petitioner, 147 shares to Dupree, and 6 shares to the attorney Frederick A. Scott. Red Oak, Inc., subdivided the 19.6 acres into about 60 lots and tried to sell them but, with the exception of the two lots mentioned in the second succeeding paragraph, was unable to do so. It was then that Dupree called upon petitioner for reimbursement of all his investment. On or about October 1, 1952, petitioner returned the $13,000 Dupree had put up, by means of transferring to him a one-half interest in the $25,000 note petitioner had received from the Red Oak Development Corporation, plus his personal check for $500, together with the cancellation and surrender of the remaining amount due on the $5,000 note and the cancellation and surrender of the $35,000 note. Dupree transferred back to petitioner his one-half interest in the *147 remaining 100.4 acres, together with the 147 shares of Red Oak, Inc., and that automatically cancelled out their entire agreement entered into on or about March 25, 1952. Petitioners realized no gain or loss on this so-called "$50,000 deal." On or about November 14, 1952, Red Oak, Inc., conveyed to Louis V. Menard, Jr., two lots in Red Oak Commercial Center for a consideration of $5,000, payable $2,000 in cash and a promissory note payable in monthly installments of $60 per month with interest at 5 percent. Later, on or about July 20, 1953, Red Oak, Inc., by deed transferred the 58 lots it could not sell to petitioner. On or about July 22, 1953, petitioner by deed transferred the 58 lots to Babin Development Company, Inc., for a stated consideration of $70,000 represented by a note payable in 10 annual installments with the understanding that if the lots could not be sold by Babin Development Company, Inc., petitioner would take them back. No payments were ever made on the note. Babin Development Company, Inc., was owned by Pearce and Scott. On or about July 24, 1953, petitioner agreed to advance and did advance $6,000 to Babin Development Company, Inc., for the purpose of *148 geting a supply of water and of getting the railroad to run a spur into the property, but these objectives did not materialize. Also during 1953 petitioner paid Scott $311.48 for legal fees rendered by Scott for Babin Development Company, Inc.
Again, the 58 lots could not be sold and, in accordance with the understanding had at the time the lots were transferred to Babin Development Company, Inc., on July 22, 1953, the latter transferred them back to petitioner by two formal deeds, one for 6 lots on December 7, 1953, for a stated consideration of $15,000, and one for 51 lots [2] on August 12, 1954, for a stated consideration of $61,311.48, and petitioner returned the note for $70,000. No money ever changed hands except the $6,000 advanced by petitioner and the $311.48 legal fees paid by petitioner. The so-called "$70,000 deal" of July 20, 1953, "fell through" and was never consummated. No mention was made of the so-called "$70,000 deal" in petitioners' income tax returns for 1953 and 1954 and no income was reported by petitioners from any of petitioner's transactions with Babin Development Company, Inc., in either *149 year. Petitioners realized no gain or loss on this so-called "$70,000 deal." During the taxable years 1952, 1953, and 1954 and in years prior to 1952, petitioner was engaged in the business of developing, promoting, and subdividing land and of selling real estate. Except for the three so-called "deals" ($20,000, $50,000, and $70,000), all sales and exchanges of real estate, including lots and land sold or traded by petitioner during the taxable years 1952, 1953, and 1954 and in years prior to 1952, were sales or exchanges of properties held primarily for sale in the ordinary course of petitioner's trade or business, except as otherwise determined by the respondent. (b) Facts Relating to Issue 2 Petitioners did not file declarations of estimated tax for the taxable years 1952, 1953, and 1954. (c) Facts Relating to Issue 5 During 1952 and 1953 petitioner advanced $9,300 and $5,350, respectively, to Red Oak, Inc. With the exception of something like about $1,500, no money was originally paid in as capital and Red Oak, Inc., had almost no operating capital. All expenses of the corporation were paid by advances from either petitioner or Dupree. Red Oak, Inc., was inadequately *150 capitalized. All advances made by petitioner to Red Oak, Inc., during the years 1952 and 1953 were contributions of capital or risk capital and not loans. Petitioners sustained no loss as a result of advances made to Red Oak, Inc.
On April 26, 1952, Scott executed a note payable to petitioner in the amount of $1,200. Interest was paid on this note on December 26, 1952, in the amount of $50. The principal of the note was satisfied at some undisclosed time with legal services rendered by Scott to petitioner. On July 28, 1953, and December 11, 1953, petitioner and his wife advanced $3,500 and $1,500, respectively, to Babin Development Company, Inc.
In June 1953 petitioner endorsed a demand note for $1,345 given by his wife's brother-in-law, John Frank Sommers, to Dupree. Sommers was unable to make any payment on the note and petitioner had to pay it. On August 12, 1953, Scott executed a demand note for $2,780 to Red Oak Development Corporation. Petitioner sustained no loss by reason of this note. On September 20, 1954, petitioner and Sommers executed a note payable six months after date "to the order of ourselves" for $1,900 with interest at 6 percent. Opinion Issue 3. At *151 the outset we think Issue 3 should be decided for the respondent. We think petitioner was engaged in the real estate business and that the many lots which he sold in 1950 through 1954 constituted "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" as that phrase is used in section 117(a)(1)(A) of the 1939 Code and section 1221(1) of the 1954 Code. Therefore, except as otherwise determined by the respondent, and not in issue here, the gain from such sales is taxable as ordinary income as determined by the respondent rather than as capital gain as reported by petitioners. Brown v. Commissioner, 143 F. 2d 468 (C.A. 5, 1944), affirming a Memorandum Opinion of this Court; King v. Commissioner, 189 F. 2d 122 (C.A. 5, 1951), affirming a Memorandum Opinion of this Court; C. E. Mauldin, 16 T.C. 698, affd. 195 F. 2d 714 (C.A. 10, 1952); Gamble v. Commissioner, 242 F. 2d 586 (C.A. 5, 1957), affirming a Memorandum Opinion of this Court; Paul K. Ashby, 37 T.C. 92; *152 Charles Oran Mensik 37 T.C. - (Jan. 16, 1962). As to sales made in 1954, petitioners have not shown that they come within any of the provisions of section 1237 of the 1954 Code. Issue 1. Although the assignments of error attack the entire understatements determined by the respondent, evidence was introduced only as to four major transactions. These we will consider seriatim. First. The first major transaction is the so-called "$20,000 deal" with Pearce and LeBlanc involving the contract and agreement with these parties, dated November 14, 1951, and the formal deeds dated February 6, 1952. Respondent determined that petitioner sold raw acreage to Pearce and LeBlanc on which he realized a taxable profit in 1952 of $17,916.80 (selling price $20,000 less basis of $2,083.20). Petitioner contends this was not a sale but merely a transfer of convenience with the understanding that Pearce and LeBlanc were to develop and plat the acreage into 50 salable lots, keep 30 lots for their services, and return to petitioner 20 lots fully developed and ready for sale by petitioner. In the alternative, petitioner contends that if the transfer to Pearce and LeBlanc constituted a sale, it was a *153 sale in 1951 and not in 1952. We do not think the transaction was a sale. No cash consideration passed between any of the parties. The recitation of $20,000 stated in the formal deeds was, as stated in the November 14, 1951, agreement, "for record purposes only." In substance, petitioner merely engaged Pearce and LeBlanc to develop this piece of 34.72 acres of raw land into a subdivision of salable lots in consideration of the retention by them of 30 lots for their services. The effect of the transaction is to increase the basis of the 20 lots petitioner received back for sale by the cost to petitioner of the land making up the 30 lots to be retained by Pearce and LeBlanc. The transaction is much like a joint venture wherein petitioner would furnish the land to be developed and Pearce and LeBlanc would furnish the developing, whereupon the finished product would be divided on the basis of 3/5 to Pearce and LeBlanc and 2/5 to petitioner. In any event, we do not think petitioner realized any gain or loss until he sold his 20 developed lots, 18 of which he sold in April and May of 1952. The other two were sold, one in 1953, and one in 1954. The parties have stipulated in paragraph 20 *154 of the stipulation what the basis shall be in the event that we determine, as we have, that the transfer to Pearce and LeBlanc was not a taxable sale in 1952. The correct gain from the sale of the 20 developed lots will be determined under Rule 50. We hold for petitioners on this transaction. Second. The second major transaction is the sale on or about August 13, 1952, of approximately 32 acres to Red Oak Development Corporation for $25,000. In Schedule C of their return for 1952, petitioners reported a taxable income of $5,192.45 from this transaction which they now concede was a mathematical error and should have been $5,682.46, computed as follows: Sale price
$25,000.00
Cost basis
2,270.19
Gross profit
22,729.81
1/2 taxable to petitioners
11,364.91
1/2 taxable as capital gain
5,682.46
Paragraph 21 of the stipulation of facts is as follows: 21. The gain on the sale on August 13, 1952, by Alphonse Babin to the Red Oak Development Corporation, which gain is included in real estate sales for 1952 in the statutory notice of deficiency, is computed as follows: Sales price
$25,000.00
Cost basis
2,300.00
Gain on sale
$22,700.00
It is *155 not clear from the record why petitioners in their return only regarded one-half of the gross profit as being taxable to them. This was an absolute sale of approximately 32 acres for a consideration of $25,000 and the gain on the sale was the difference between the selling price and the cost basis of $2,300. It was a completed transaction at that time. The entire gain was taxable to petitioners in 1952 when the sale occurred. The fact that petitioner later, on or about October 1, 1952, used one-half of the consideration received to pay an obligation incurred in another transaction could have no effect on the earlier transaction, both of which are separate and distinct from each other. The gain taxable to the petitioner is $22,700. We have already held that petitioners were not entitled to report the gain as capital gain. We hold for the respondent on this transaction. Third. The third major transaction is the so-called "$50,000 deal" with Dupree. The facts regarding this transaction are fully set out in our findings beginning with the paragraph "On or about March 25, 1952 * * *." The evidence in the record clearly shows that while petitioner and Dupree went through the form of making *156 a sale and organizing Red Oak, Inc., they had a thorough and complete understanding that, if the acreage and lots there involved could not be sold, the entire "deal" would be cancelled and the parties restored to the position they originally occupied. The properties involved could not be sold and the parties were restored to their original position. We hold for petitioners on this transaction. Fourth. The fourth major transaction is the so-called "$70,000 deal" with Babin Development Company, Inc. This was clearly, as petitioner contends, a transfer for convenience. Petitioner, on July 20, 1953, had received back the 58 lots from Red Oak, Inc. Two days later it transferred these lots for convenience to Babin Development Company, Inc., with the understanding that, if the lots could not be sold, petitioner would take them back. The lots could not be sold and petitioner took them back and returned the note. The transaction was never consummated and petitioner realized neither gain nor loss on the deal. We hold for petitioners on this transaction. Issue 2. At the hearing petitioners offered what purported to be a retained undated copy of a declaration of estimated tax return for the *157 year 1954 showing an amount of $80 as the "Amount paid with this declaration." Respondent offered the testimony of the chief of the taxpayer section in the New Orleans district office who testified that "The records indicate we have no record of a 1040-ES being filed by Alphonse L. Babin or Mildred Babin for the year 1954." Petitioners' income tax return for 1954 does not show any amount as "Payments on 1954 Declaration of Estimated Tax" in the space (Line 12B) provided therefor. The parties have stipulated that no declarations were filed for 1952 and 1953 and we find and hold that no declarations were filed for any of the years here involved. We also hold that the petitioners have not shown reasonable cause for their failure to file the required declarations. It follows that petitioners are liable for additions to tax under section 294(d)(1)(A) of the 1939 Code for the years 1952, 1953, and 1954. The correct amounts of the additions will be determined under Rule 50. The respondent concedes that, since no declarations were filed, petitioners are not liable for the additions under section 294(d)(2), in line with the Supreme Court's decision in Commissioner v. Acker, 361 U.S. 87. *158 Issue 4. We have made no findings regarding this issue for the reason that no evidence was introduced as to this issue at the hearing. The allegations made by petitioners in their petition were denied by the respondent in his answer. Without evidence we must hold that petitioners are not entitled to the loss they claim. Issue 5. In an amended petition petitioners allege error on the part of the respondent in failing to allow deductions from gross income, as follows: 1952
Money advanced to Red Oak, Inc.,
not repaid
$14,850.00
Note of Scott, remaining unpaid
1,200.00
Total
$16,050.00
1953
Loan to Babin Development Com-
pany, Inc.
$ 6,000.00
Loan to Babin Development Com-
pany, Inc.
3,500.00
Loan to Babin Development Com-
pany, Inc.
1,500.00
Legal fee paid for Babin Develop-
ment Co., Inc.
311.48
Cost of lot and parcel deeded to Red
Oak Water Co.
858.98
Note of Sommers endorsed by peti-
tioner
1,345.00
Note of Scott to Red Oak Develop-
ment Corporation pledged to peti-
tioner
2,780.00
Total
$16,295.46
1954
Note of Sommers endorsed by peti-
tioner
$ 1,900.00
None of the above deductions were claimed by petitioners in *159 their returns or in their original petition. The claims were first made in the amended petition filed September 8, 1961. For reasons hereinafter stated, we hold petitioners are not entitled to deduct any of the items listed above. Regarding the $14,850 claimed in 1952, the evidence shows that petitioner personally advanced $9,300 to Red Oak, Inc., in 1952 and $5,350 in 1953, a total of $14,650 (not $14,850). Red Oak, Inc., was organized in August 1952 for the purpose of subdividing and developing a commercial center from raw land. It was organized and formed with something like $1,500 of operating capital and with the intention that additional funds would be furnished by petitioner and Dupree each of whom at the time of organization owned half of the shares with the exception of 6 shares held by Scott. All shares (300) were originally issued in exchange for a tract of land. From the start, all operating expenses were paid by shareholder's advances. From August to October, petitioner owned approximately half of the shares. After October 1, 1952, petitioner owned all but six of the 300 shares. There is no evidence indicating that any notes were ever received, that interest was paid *160 or payable on any of the advances, or that there were any fixed terms of payment. No evidence was offered to show how Red Oak, Inc., or the petitioner recorded these advances or for what purpose the particular advances were made. It is evident that the advances made were placed at the risk of the business and there was no reasonable expectation of repayment except through successful operation of the business. We hold the advances were capital contributions and not debts. Edward G. Janeway, 2 T.C. 197, affd. 147 F. 2d 602 (C.A. 2, 1945); Sam Schnitzer, 13 T.C. 43, affd. 183 F. 2d 70 (C.A. 9, 1950), certiorari denied 340 U.S. 911; Lewis L. Culley, 29 T.C. 1076. In regard to the $1,200 note of Scott, the theory on which this deduction is claimed is not clear. The theory appears to be that of "bad debt" rather than expense. The evidence shows a payment of interest on the $1,200 note in December 1952. Scott, petitioner's attorney from 1950 to 1955, testified that he had never paid the note and never intended to pay it since it was not due. He further testified that, at a date unknown, he and petitioner *161 agreed that the debt would be cancelled as payment for legal services. Assuming that the $1,200 represented a deductible legal expense, there is no evidence which would establish the year of payment. It should be noted that in the statutory notice of deficiency for 1952 and 1953 additional attorney's fees were allowed petitioners in excess of those claimed in the returns for those years. The $6,000 advanced to Babin Development Company, Inc., on July 24, 1953, and the $311.48 legal fees petitioner paid Scott for services rendered the Babin Development Company, Inc., were all tied up in the so-called "$70,000 deal" which was never consummated and wherein we held petitioner realized neither gain nor loss. As to the $3,500 and $1,500 advanced to Babin Development Company, Inc., by petitioners, there is no evidence that petitioners ever sustained any loss by reason of these advances but, if any loss was sustained, there is no evidence of the year it happened. Petitioners offered no evidence regarding the $858.98 item. Petitioners in their answer brief seem to assume that the burden was on the respondent to refute petitioners' claim made in the amended petition. The respondent in his *162 Answer to Amended Petition denied all of the allegations made by petitioners in their amended petition. The burden was clearly upon petitioners to establish their claim. This they have failed to do. Regarding the note of Sommers for $1,345 endorsed by petitioner, the evidence shows that Sommers was unable to make any payment on the note and petitioner had to pay it. Petitioner, however, did not show the year in which he was called upon to pay the note or that a loss was definitely sustained. Petitioners have not established that they are entitled to a deduction in 1953 for the demand note executed by Scott and made payable to the Red Oak Development Corporation in the amount of $2,780. Furthermore, in the statement attached to the deficiency notice, it appears that the respondent has allowed as a deduction in 1953 an additional attorney fee in the amount of $2,780. Regarding the final item of $1,900 claimed in 1954 in connection with the note which petitioner and Sommers executed on September 20, 1954, payable "Six (6) Months after date * * * to the order of ourselves," it is evident that the note would not become due until after the close of the taxable year 1954. We hold petitioners *163 were not entitled to any loss as a result of this note in 1954. Decision will be entered under Rule 50. Footnotes
1. Hereafter, when the singular term "petitioner" is used, we have reference only to petitioner Alphonse L. Babin.↩
2. The record does not show what happened to one of the 58 lots.↩