**CLEVITE CORPORATION** *

v.

The **UNITED STATES**.

No. 70–64.

United States Court of Claims.

Nov. 9, 1967.

Laurence F. Casey, New York City, attorney of record, for plaintiff. Brown, Wood, Fuller, Caldwell & Ivey, New York City, of counsel.

Richard J. Boyle, Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant. Richard C. Pugh, Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LAR-AMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Chief Trial Commissioner Marion T. Bennett, with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on December 20, 1966. Exceptions were filed by plaintiff and the case was submitted to the court on the briefs of the parties and oral argu-

---

* By order of September 29, 1967, the court allowed a motion of the original plaintiff, Servel, Inc., to substitute Clevite Corporation as the party plaintiff provided that in the event plaintiff shall be entitled to recover judgment against defendant, plaintiff shall produce documentary evidence showing that Clevite Corporation is the successor to and transferee of Servel, Inc.

ment of counsel. Since the court is in agreement with the opinion, findings, and recommended conclusion of law of the commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is therefore not entitled to recover and its petition is dismissed.

## OPINION OF COMMISSIONER**

BENNETT, Chief Commissioner:

Plaintiff, a Delaware corporation with offices in Evansville, Indiana, on December 23, 1958, purchased the business and assets of the Burgess Battery Company, hereinafter referred to as Burgess, a Delaware corporation with offices in Freeport, Illinois. The purchase was pursuant to an agreement dated December 2, 1958, which declared that the consideration provided by plaintiff would include, among other things, "all the liabilities of Burgess which shall have arisen in the ordinary and usual course of business between September 30, 1958 and the Date of Closing and which are shown or provided for on its books at the Date of Closing."

Plaintiff now seeks judgment for income taxes assessed against Burgess and paid by plaintiff as transferee thereof, together with assessed interest. The principal question presented is whether, as plaintiff maintains, Burgess' liabilities for certain Christmas holiday pay and vacation payments became fixed and enforceable during the taxable year ending March 31, 1959. For reasons hereinafter shown, the answer is in the negative and the claim must be denied.

Burgess was engaged in the manufacture and sale of batteries. It kept its books and filed its federal income tax returns on an accrual basis for taxable years ending on March 31. Burgess' vacation year, however, ran from May 1 to April 30 of the succeeding year. Its Employee Rule Book and Foreman's Policy Manual contained provisions which determined the amount of vacation

pay by the period of time that an employee had worked for the company prior to May 1 of the year in which the vacation was taken. Vacation pay was paid at the beginning of each vacation period; consequently, the vacation plan required any individual who claimed vacation pay to be an active employee of Burgess on the date that payment was made. Similarly, holiday pay to employees who worked on a legal holiday was paid with their regular pay on Fridays, or in some cases, Thursday evenings. These payments were for the time worked during the previous week.

In years prior to the taxable year ending March 31, 1959, Burgess had claimed its vacation pay deductions on a cash basis. These deductions were allowed in the taxable year within which the payments were made and within which the vacation period, beginning May 1, fell. In conformity with this practice, Burgess paid in the period which began May 1, 1958, $99,274.47 as vacation pay which had been earned during the period May 1, 1957, to April 30, 1958. This amount was allowed as a deduction for the taxable year ending March 31, 1959.

On December 22, 1958, Burgess accrued $14,254.04 on its books as Christmas holiday pay, which amount was paid by plaintiff on January 2, 1959, to the former employees of Burgess who had become plaintiff's employees on December 23, 1958. Also, on December 22, 1958, Burgess accrued on its books $100,000 as estimated vacation pay to be paid to Burgess' employees on or after May 1, 1959, with respect to vacations earned in the period beginning May 1, 1958, and ending December 22, 1958. Such amounts were paid by plaintiff to those employees during the vacation year beginning May 1, 1959. In Burgess' return for the taxable year ending March 31, 1959, these accruals of $14,254.04 and $100,000 were claimed as deductions. However, both deductions were disallowed by the Internal Revenue Service. No deduction was claimed by, or allowed

** The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57 (a).

to, plaintiff for its payment of amounts accrued by Burgess with respect to vacations earned by former Burgess' employees during the period beginning May 1, 1958, through December 22, 1958, when Burgess ceased business operations.

Plaintiff paid $106,080.99 to the Internal Revenue Service on March 3, 1961, representing taxes allegedly owed to the Internal Revenue Service as a result of its disallowance of the accrued holiday and vacation pay expenses for the taxable year ending March 31, 1959, as well as payment for other deficiencies not at issue here. On or about February 21, 1963, plaintiff filed with the Internal Revenue Service a claim for refund of income taxes with respect to Burgess' taxable year ending March 31, 1959. This claim for refund was disallowed. Plaintiff is now before this court in order to recover the alleged overpayment of federal income taxes for the taxable year ending March 31, 1959.

At issue in this case is whether plaintiff may recover under Int.Rev.Code of 1954, §§ 162(a), 446, and 461, for income taxes assessed against the Burgess Battery Company and paid by plaintiff as transferee thereof. Burgess had claimed accrued salary expense deductions which were disallowed by the Internal Revenue Service. Inasmuch as salary expenses are deductible under Int.Rev.Code of 1954, § 162(a), 26 C.F.R. § 1.162–7 (a) (1961), the primary issue concerns the proper year in which the deductions may be allowed. See Int.Rev.Code of 1954, § 461(a), 26 C.F.R. § 1.461–1(a) (2) (1961).[1] An accrual of holiday pay by Burgess normally would have been unnecessary, because payment occurred in the same taxable year in which the deduction was claimed. However, Burgess went out of business before the Christmas holiday; hence, the court must consider the propriety of an accrual expense which, in fact, was paid during the same

taxable year, but by a different taxpayer. Due to the fact that the accruals of vacation and holiday pay require a consideration of essentially identical issues, the following discussion will be concerned primarily with the vacation pay accrual in order to avoid repetition and unnecessary prolixity.

A taxpayer's method of accounting must clearly reflect income. Int.Rev. Code of 1954, § 446(b), 26 C.F.R. § 1.446–1(a) (2) (1961). Income may be accurately reflected even though the taxpayer, in shifting from a cash to accrual basis, deducted its vacation expenses on a cash *and* accrual basis. See Texaco-Cities Serv. Pipe Line Co. v. United States, 170 F.Supp. 644, 145 Ct.Cl. 274 (1959).

"Under an accrual· method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." 26 C.F.R. § 1.461–1(a) (2) (1961). United States v. Consolidated Edison Co. of N. Y., 366 U.S. 380, 81 S. Ct. 1326, 6 L.Ed.2d 356 (1961); United States v. Anderson, 269 U.S. 422, 46 S. Ct. 131, 70 L.Ed. 347 (1926). Taxpayers may accrue a deduction for liabilities which have not been assessed but are predictably going to be assessed and the size of which is immediately determinable. Hershey Creamery Co. v. United States, 101 F.Supp. 877, 122 Ct.Cl. 423 (1952). But, where payment—specifically, payment of vacation pay—is contingent upon employment up to the beginning of the vacation period, a taxpayer cannot accrue expenses for vacation pay before the taxable year in which the payments are made. Until the vacation period begins, the "all events" test, 26 C.F.R. § 1.461–1(a) (2) (1961), has not been satisfied. Turtle Wax, Inc., 43 T.C. 460 (1965); Denver & Rio Grande W. R.

---

1. Because Burgess transferred its business assets and liabilities to the plaintiff during the taxable year at issue, however, plaintiff would be unable to claim a deduction for these particular salary expenses in any subsequent taxable year. Thus, the taxable year ending March 31, 1959, is the only year for which plaintiff may claim these deductions on behalf of Burgess.

R., 38 T.C. 557 (1962); Texaco-Cities Serv. Pipe Line Co. v. United States, supra.

Plaintiff here has argued that, in its own words,

> * * * The crucial fact which distinguishes the present case from such cases as Turtle Wax, Inc., supra, and Denver & Rio Grande Western Railroad Co., supra, is that by accruing such amount, coupled with plaintiff's unconditional agreement that the amount so accrued would be paid, as it was, Burgess effectively eliminated the condition of the vacation pay plan previously observed, viz., that an employee be in service at the beginning of the vacation season, May 1st, in order to be entitled to a paid vacation.

If Burgess, in previous taxable years, had tried to claim a deduction for accrued vacation pay—without there being a sale or imminent sale of Burgess' business—such deductions would have been highly susceptible to disallowance under the decisions by this court and the Tax Court. Turtle Wax, Inc., supra; Denver & Rio Grande W. R. R., supra; Texaco-Cities Serv. Pipe Line Co. v. United States, supra. Plaintiff argues, though, that accrual, at a time when the sales contract had been signed and was about to be executed, had an impact on Burgess' liability for vacation pay by altering a contingency into a fixed liability. Consequently, the significance of the sales contract, taken alone and in combination with the accrual, must be assessed.

The sales contract established a continuum of liability between Burgess and Servel. But Servel was liable only to the extent and in the amount that Burgess was liable. Moreover, Servel had no liability of any kind toward Burgess' employees until after the date of closing, which was December 23, 1958. Until then the sales contract was without effect or legal significance, and before the closing date Servel could not interfere with or vary the status of Burgess' employees. So, on the date of accrual, December 22, 1958, Burgess was but a party to an unexecuted sales contract which, when considered by itself, was unable to modify the conditions of Burgess' vacation plan.

Inasmuch as accrual is a bookkeeping technique which recognizes a preexisting relationship—without, at the same time, the power to establish any new polarizations of rights and liabilities, for it is but a reflection of underlying fact [2]—the accrual by Burgess could not waive the contingent condition of its vacation plan. By the same token, an impending transfer of authority and obligation to Servel could not change this fundamental limitation on the character of an accrual in Burgess' books. Therefore, the argument that a *combination* of sales contract and accrual could create a fixed liability is erroneous, for they have not been shown to have attained a significance together greater than that which was obtained when they were considered separately. Viewing the problem on a more specific level, the combination of events could not constitute a waiver of the contingency requirement by Burgess because a purchaser's promise to accept and honor all liabilities of the seller is patently not a promise *by the seller* to waive a condition in its vacation plan in order to establish a fixed liability for the purchaser to assume; and, as indicated above, the act of accrual is not a waiver when taken alone or in combination with a sales contract. See 5 WILLISTON, CONTRACTS §§ 678, 679 (3d ed. 1961). In addition, the board of directors passed no resolution, and the shareholders expressed no opinion on the subject, so that this case is demonstrably distinguishable from Champion Spark Plug Co., 30 T.C. 295 (1958), aff'd per curiam, Commissioner of Internal Revenue v. Champion Spark Plug Co., 266 F.2d 347 (6th Cir. 1959). " * * * payments are deductible only in the year in which a fixed liability or obligation to pay is created. Such a liability implies a

---

2. Not the other way around, as plaintiff would argue: " * * * that the shadows which he formerly saw are truer than the objects which are now shown * * *." PLATO, THE REPUBLIC, BOOK VII.

proper authorization. \* \* \* The authorization must be outstanding at the end of the year; \* \* \*." 2 MERTENS, FEDERAL INCOME TAXATION § 12.87 (1961). See also id. at §§ 12.88, 12.89.

Without evidence that Burgess incurred a fixed liability toward its employees, plaintiff's petition must be dismissed. Turtle Wax, Inc., supra; Denver & Rio Grande W. R. R., supra; Texaco-Cities Serv. Pipe Line Co. v. United States, supra. That Servel actually made vacation payments to its employees does not alter this conclusion, for Servel would have been equally as liable for vacation pay under the contingent plan if Servel had decided to continue it. Moreover, Servel would certainly want to maintain labor peace. Vacation payments in conformity with the contingency plan—even if Servel were not technically bound by it—would facilitate harmonious labor-management relations. Therefore, the fact of payment by Servel is not persuasive evidence that Servel was absolutely liable to make such payment at the date of closing.

As indicated earlier, the principles which controlled a consideration of Burgess' accrued vacation pay relate also to a consideration of its accrual of Christmas holiday pay. Fundamentally, the "all events" test was not met because holiday pay was dependent upon employment during the holiday. If an employee were fired or quit on the 23d or 24th of December 1958 he would not have been entitled to Christmas vacation pay. The reasons for denying plaintiff's argument for accruing vacation pay, i. e., that a waiver had not occurred by dint of the sales contract and accrual, apply here also, and as Burgess' liability for Christmas pay remained contingent on December 22, 1958, its claim for a deduction must be similarly denied. Turtle Wax, Inc., supra; Denver & Rio Grande W. R. R., supra; Texaco-Cities Serv. Pipe Line Co. v. United States, supra.

Because the "all events" test was not satisfied, the additional arguments by plaintiff that, under Illinois law, Burgess' employees were third-party beneficiaries of the sales contract, and the argument by defendant that the accrual had to be denied because the prior consent of the Commissioner had not been obtained, need not be considered. Furthermore, for the same reason, the court does not have to consider the contentions by the parties relating to the recent decision of John Wanamaker Philadelphia, Inc. v. United States, 359 F.2d 437, 175 Ct. Cl. 169 (1966).

The petition must be dismissed.