J.D. REAL ESTATE COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
J. D. Real Estate Co. v. Commissioner
Docket No. 19859-82.
United States Tax Court
T.C. Memo 1985-69; 1985 Tax Ct. Memo LEXIS 567; 49 T.C.M. (CCH) 763; T.C.M. (RIA) 85069; February 13, 1985. Leonard Jacobs, for the petitioner. Frank W. Louis, for the respondent. WILES
*763 MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined an $84,291.08 deficiency in petitioner's Federal income taxes for the fiscal year ending October 31, 1974. The sole issue for decision is whether petitioner, an accrual basis taxpayer, must include in income during its fiscal year ending October 31, 1974, the portion of a real estate commission earned on the sale of an apartment complex, payment of which was deferred until a later taxable year. *764 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner is a corporation whose principal place of business *568 was located in Manchester, Connecticut, at the time the petition was filed. Petitioner is an accrual basis taxpayer operating on a fiscal year ending October 31. The entire controversy herein involves a $240,000 commission earned by petitioner for negotiating the sale of an apartment complex in Vernon, Connecticut, on October 23, 1974. On October 23, 1974, Sol Lavitt, owner of the Mount Vernon Apartment Complex (hereinafter MVAC), mortgaged the MVAC to Society for Savings for $1,700,000. Immediately thereafter Lavitt sold the MVAC to Mount Vernon Enterprises for $3,610,108.41, subject to Society for Savings' $1,700,000 mortgage. Pursuant to the terms of sale, Lavitt received a purchase money mortgage from Mount Vernon Enterprises securing a note in the principal amount of $3,610,108.41. The $3,610,108.41 note is a nonrecourse, balloon payment obligation. With the exception of two principal payments of $25,000 each, due on October 15, 1987 and October 15, 1988, Mount Vernon Enterprises is only liable for interest payments until October 23, 1989, when the entire principal balance becomes due. Upon receipt of the note and purchase money mortgage, Lavitt assigned them to H. David *569 Leventhal, Trustee. Under the terms of the assignment agreement, Leventhal agreed to distribute all *3 payments received in the following order of priority: (1) to pay all amounts due under the terms of Lavitt's promissory note in the principal amount of $1,350,000 payable to the order of Society for Savings; [1] (2) to pay all amounts due under the terms of Lavitt's promissory note in the principal amount of $310,000 payable to the order of Robert Satter, Trustee; (3) to pay $3,722 per month jointly to Lavitt and petitioner; [2] and (4) to pay the balance of any payments to John A. DeQuattro, Trustee. In the event Leventhal foreclosed the property by sale, he agreed to distribute all sale proceeds in the same order of priority with the exception that all costs incurred in protecting the *570 lien or foreclosing the mortgage are to be paid first, and Lavitt and petitioner are to jointly receive a fixed sum of $1,650,108.41. For negotiating the sale of the MVAC, petitioner received a commission of $240,000 payable $60,000 at closing and $180,000 according to the terms of a commission agreement between Lavitt and petitioner. The commission agreement, concomitantly with the assignment agreement, provides that after payment of the amounts due under Lavitt's $1,350,000 loan from Society for Savings and *4 the $310,000 due to Robert Satter, Trustee, petitioner is to receive an interest in the purchase money mortgage payable as follows: (1) From the interest proceeds of the purchase money mortgage, petitioner is to receive annual interest payments of $10,000 on the outstanding $180,000 commission and, in the event the mortgagor fails to pay the full amount of interest due, petitioner is to receive 10/44ths of the interest payments remaining for Lavitt's account after payment of the two prior interests; (2) from the principal payments of the purchase money mortgage, petitioner is to receive 10/44ths of any payments Lavitt receives up to $180,000; and (3) all of the payments *571 of interest and principal are to be paid only if, as and when they are received by Lavitt under the purchase money mortgage. On its corporate income tax return (Form 1120) filed for the taxable year ending October 31, 1974, petitioner reported as income $60,000 of the $240,000 real estate commission due from the sale of the MVAC. In the notice of deficiency, respondent determined that petitioner must include the $240,000 commission in income during the year it was earned. Accordingly, respondent increased petitioner's taxable income by $180,000. OPINION We must determine whether petitioner, an accrual basis taxpayer, must include in income the portion of a real estate commission earned on the sale of an apartment complex, payment of which was deferred until a later taxable year. *5 Section 451(a) [3] provides that "the amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period." Section 1.451-1(a), Income Tax Regs., provides that under the accrual method of accounting, *572 income must be included in gross income when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy. Generally, it is the right to receive, and not the actual receipt of, income that determines the inclusion of an amount in gross income. Spring City Foundry Co. v. Commissioner,292 U.S. 182, 184-185 (1934). An exception to the general rule of inclusion for accrual basis taxpayers exists where such income is of doubtful collectibility. Clifton Mfg. Co. v. Commissioner,137 F. 2d 290 (4th Cir. 1943); Georgia School-Book Depository, Inc. v. Commissioner,1 T.C. 463, 469 (1943). However, the courts have construed this exception quite narrowly (see Georgia School-Book Depository, Inc. v. Commissioner,supra; see also Jones Lumber Co. v. Commissioner,404 F. 2d 764 (6th Cir. 1968), affg. a Memorandum Opinion of this Court), and the mere possibility of a default on an obligation is insufficient to defer accrual of such *6 obligation. *573 See Spring City Foundry Co. v. Commissioner,supra.Moreover, reasonable doubt as to the collectibility of an obligation must be established as of the time the right to the income arises. Spring City Foundry Co. v. Commissioner,supra.
Respondent's determination is presumptively correct and the taxpayer bears the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure. Generally, to sustain his burden, the taxpayer must show that the obligor was financially unstable or insolvent at the time the obligation is received. See Jones Lumber Co. v. Commissioner,supra.
Petitioner maintains that payment of the $180,000 deferred portion of the real estate commission due from the sale of the Mount Vernon Apartment Complex was contingent, or of sufficiently reasonable uncertainty, so as to preclude accrual of such item during petitioner's taxable year ending October 31, 1974. The crux of petitioner's argument is that the value of the MVAC securing the nonrecourse purchase money mortgage was less than the value of the first mortgage and other interests prior in right to petitioner, the MVAC generated less *574 rental income than is required to satisfy the mortgage and operating expenses, and therefore petitioner was totally unsecured and its prospects of collecting the deferred portion of the real estate commission was in serious doubt. Respondent maintains that petitioner's right to receive the $240,000 commission was fixed and determinable on October 23, 1974, and that petitioner has failed to show an *7 exception to the general rule of accrual. We agree with the respondent. Petitioner's right to receive the $240,000 commission was fixed and unconditional when it performed all services in connection with the sale of the MVAC on October 23, 1974, and accrual of the entire $240,000 commission was appropriate at that time. See Georgia School-Book Depository, Inc. v. Commissioner,supra. Petitioner has failed to convince us that payment of the purchase money mortgage by Mount Vernon Enterprises was unlikely. Petitioner presented absolutely no evidence to indicate that Mount Vernon Enterprises was financially unstable or insolvent at the time it acquired the MVAC. See Jones Lumber Co. v. Commissioner,supra.
Petitioner's attempt *575 to show that the fair market value of the complex was less than the amount of the outstanding mortgages and that the complex could not generate enough income to pay its debts is insufficient to defer accrual. At best, petitioner has shown a mere possibility of default on an obligation which is not sufficient to defer accrual of income that has been earned. Spring City Foundry Co. v. Commissioner,supra;First Savings & Loan Assn. v. Commissioner,40 T.C. 474, 487 (1963). The mere fact that the purchase money mortgage from which petitioner was to receive its deferred commission payment was nonrecourse does not establish that the mortgage will not be paid, even though the fair market value of the apartments may be less than the outstanding mortgages. There are many circumstances under which *8 a nonrecourse mortgage exceeding the current fair market value of a property would be paid off by the mortgagor.[4] Moreover, petitioner has not shown enough of Mount Vernon Enterprises' financial picture to prove that, in the light of the favorable tax consequences of real estate ownership, the apartment complex generated insufficient income to pay *576 the outstanding mortgages and operating expenses. Furthermore, even if petitioner had proved that the apartment complex generated insufficient income, it has not shown that the purchaser was unwilling or unable to pay the mortgages and operating expenses as of October 23, 1974. Accordingly, petitioner must accrue the face amount of the $180,000 deferred portion of the $240,000 real estate commission earned on October 23, 1974. First Savings & Loan Assn. v. Commissioner,40 T.C. 474, 487 (1963). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. This $1,350,000 promissory note represents a loan from Society for Savings to Lavitt executed on October 23, 1974, which is separate from the $1,700,000 mortgage on the MVAC. ↩
2. The $3,722 per month third priority interest payable jointly to Lavitt and petitioner was created to pay a portion of the real estate commission due petitioner for its participation in the sale of the MVAC.↩
3. All section references are to the Internal Revenue Code of 1954, as amended.↩
4. For example, if the mortgagor believed the property would substantially appreciate in value, or he desired the depreciation and other tax benefits of continued ownership, then he would be likely to pay off the outstanding mortgage.↩