**COOPER COMMUNITIES, INC. AND SUBSIDIARIES, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 85–5147.

United States District Court, W.D. Arkansas, Fayetteville Division.

May 22, 1987.

---

Thornton Hardie III, Bruce N. Davis, Thompson & Knight, Dallas, Tex., E.J. Ball, Ball, Mourton & Adams, Fayetteville, Ark., for plaintiff.

Michael Wilcove, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is a suit for the refund of federal income taxes alleged to have been overpaid for the tax years 1979 and 1980. The overpayment was the result of a ruling of the Internal Revenue Service disallowing the deduction, as an accrued expense, of the commission expenses associated with the sale of lots.

Cooper Communities, Inc. (hereinafter CCI), is an accrual basis taxpayer with the exception of utilizing the installment method of reporting income from the sale of residential lots. CCI's fiscal year ends in September. For the taxable years in issue, a deficiency was assessed against and ultimately paid by CCI. This suit was filed after a timely claim for refund was disallowed.

This case is now before the court on cross motions for summary judgment. The parties have filed a stipulation of facts together with attached exhibits. As the stipulation of facts is detailed, the court will state only so much of it as is necessary to an understanding of the parties' arguments.

During the tax years involved, CCI was engaged in the sale of residential lots. Sales of residential lots were made through real estate salesmen retained by the plaintiff on an independent contractor basis.

Plaintiff's sales of lots were made largely on credit, the purchasers making a down payment (usually 10 percent) and agreeing to pay the balance in monthly payments over a period of 10 to 15 years. Sales were financed by CCI through an installment contract or a promissory note and mortgage. After the period provided for by law for the rescission of the sales contract, the sale of the particular lot was regarded by plaintiff as "cured." When the sale became cured, it was recognized by plaintiff for financial and accounting purposes.

The terms of the salesmen's independent contractor relationship were not reduced to writing but were pursuant to a binding oral contract. After the documents were

signed the salesman had no further duties in regard to that particular sale. At the time each lot sale became cured, plaintiff became obligated to pay a sales commission to the salesman responsible for the sale. The salesman was entitled to receive from plaintiff one-half of all amounts from the sale (including the down payment plus principal and interest received on installment obligations) in excess of 10 percent of the purchase price until the commission was fully paid.

Commission was a stated percentage of the purchase price (8 percent in the taxable year 1979, 10 percent in 1980). Payment of the commission was effected through a "draw account." One-half of any amount received by plaintiff in excess of the 10 percent would be credited to the salesman's draw account until the entire commission was paid. In the event of a default (not later remedied) by the purchaser, no additional amounts would be credited to the salesman's draw account and the salesman would not receive any additional commission on the sale.

In the absence of a default, the crediting of the entire commission generally would be completed within 16 to 19 months. After a default by a purchaser, plaintiff took steps to collect delinquent accounts.

Plaintiff used the accrual and installment methods of accounting and reporting income for both financial and tax purposes. For income derived from the sale of residential lots, plaintiff has elected to utilize the installment method as provided under section 453(a) of the Internal Revenue Code of 1954, as amended. Under this method, income from the sales is recognized as payments are received. Absent the special provision permitting the deferral of recognition of income, the entire gain realized would have been recognized under the accrual method of reporting for tax purposes at the time the sale was cured.

Plaintiff accrued for financial and tax purposes (and deducted for tax purposes) the commission expense associated with each sale when the sale became cured. This deduction was taken for the full amount of the commission although pay-

ment was made to the salesmen only as installments were received from the purchasers. In the event of subsequent non-payment of an amount sufficient to satisfy plaintiff's commission obligation on the sale, plaintiff would "restore" (bring back into taxable income) the amount of any previously accrued and deducted commission expense that had not been credited to the salesman's draw account.

The amount of commission expenses deducted in previous years and "restored" in the taxable years in issue was between 4 and 5 percent of the total commission expenses for those prior years. Plaintiff did not develop for the taxable years in issue statistics regarding the percentage of sales contracts on which purchasers defaulted or regarding the timing (at what time during the 10 to 15 year term of the installment obligations) of such defaults.

Plaintiff filed a claim for refund which was disallowed. Defendant's position was that CCI was not entitled to accrue and deduct commission expenses on the basis that the liability for the expense was contingent. In its motion for summary judgment the defendant also argues that accruing and deducting all the commission expense at the time the sale is cured while reporting income from the sale on the installment method results in an accounting method that does not truly reflect income.

**Relevant Sections of the Internal Revenue Code and Treasury Regulations.**

*Section 446*

(a) General Rule—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) Exceptions—If no method of accounting has been regularly used by the taxpayer, *or if the method used does not clearly reflect income,* the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income. (emphasis added)

*Section 461*

(a) General Rule—The amount of any deduction or credit allowed by this subti-

tle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income.

*Treas.Reg. Section 1.446–1(c)(2).* Taxpayer using an accrual method.

Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of liability and the amount thereof can be determined with reasonable accuracy.

## DISCUSSION

The first issue is whether CCI's liability for the commission expense was sufficiently fixed when accrued to meet the "all events" test in the taxable years in question.

It is not disputed that the commission expenses are deductible. The primary issue concerns the proper timing of the deductions. The government argues that CCI's liability for the commission is contingent and therefore not deductible at the time the lot sale is "cured." In the government's view, the obligation of CCI to pay the commission expense has not materialized at the time the lot sale is regarded as "cured."

■ Section 446 of the Internal Revenue Code, 26 U.S.C. § 446, authorizes the use of an accrual method of accounting for tax purposes. Under the accrual method an expense is regarded as incurred and therefore deductible when it meets the "all events" standard as set out in the case law and regulations. The "all events" test was first enunciated by the Supreme Court in *United States v. Anderson,* 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926), and is codified in regulations promulgated under sections 446 and 461 of the Internal Revenue Code of 1954. *See* § 1.446–1(c)(2), Treas.Reg. (1954 Code).

The "all events" test consists of two elements. First, all the events must have occurred which determine the fact of liability. Second, the amount must be capable of being determined with reasonable accuracy. This case concerns only the first element, since the parties have agreed the

amount can be determined with reasonable accuracy.

"It is fundamental to the 'all events' test that, although expenses may be deductible before they have become due and payable, liability must first be firmly established." *U.S. v. General Dynamics,* — U.S. —, —, 107 S.Ct. 1732, 1736, 95 L.Ed.2d 226 (U.S.1987). When a liability is contingent on a future event, it may not be deducted. *Id. See also Trinity Construction Co. v. Commissioner,* 424 F.2d 302 (5th Cir.1970); *Clevite v. United States,* 386 F.2d 841, 181 Ct.Cl. 652, (1967).

■ Therefore, under the "all events" test, as interpreted by the courts, deduction of an expense is not dependent on when the amount is actually paid out but only on when the liability becomes firmly established. In fact, the very nature of the accrual system of accounting allows the taxpayer to deduct expenses prior to actual payment. In the case of a long term obligation, the actual payment may be several years down the road but this does not defeat the accrual of the item of expense. *United States v. Hughes Properties, Inc.,* 476 U.S. 593, 106 S.Ct. 2092, 90 L.Ed.2d 569 (U.S.1986). *See also Lawyers Title Guaranty Fund v. United States,* 508 F.2d 1 (5th Cir.1975).

In every business that uses the accrual method there is a potential of nonpayment. *United States v. Hughes Properties, Inc.,* 476 U.S. 593, 606, 106 S.Ct. 2092, 2099, 90 L.Ed.2d 569 (U.S.1986). "Early in the history of our tax scheme the courts decided that the risk of collection in a credit transaction was not a condition defeating fixed liability." *W.S. Babcock Corp. v. Commissioner,* 491 F.2d 1226, 1228 (5th Cir.1974); *see Ohmer Register Co. v. Commissioner,* 131 F.2d 682 (6th Cir.1942). In light of the foregoing, the court must decide whether liability for the commission expense was firmly established and therefore deductible in the fiscal years in question.

The facts which are stipulated and not in dispute reveal that, although there was no written contract, a consistent course of dealings was maintained between CCI and

its salespeople. Initial down payments, normally not exceeding 10 percent, were retained by CCI. One-half of any subsequent collections or payments made to CCI was credited to the salesman's draw account. No subsequent action of the purchaser or CCI could deprive the salesman of the amounts so credited. Full payment of the commission normally took place in 16 to 19 months.

Similar cases have held a commission expense accruable and therefore deductible despite the fact that actual payment was not made until a later date. *See Lawyers Title Guaranty Fund v. United States, supra,* (commissions to member lawyers were deductible when credited, even though not normally payable for seven years and subject to reduction); *W.S. Babcock Corp. v. Commissioner, supra,* (sales commission paid as collections came in); *Ohmer Register Co. v. Commissioner, supra,* (taxpayer's liability to pay commissions was sufficiently fixed in year it was accrued though time of its payment was deferred); *In the Matter of J.C. Investments, Inc.,* 15 B.R. 392 (1981) (commission paid as a percentage of gross sales price and a percentage of cash flow until paid in full).

▪ The court believes that this case involves more than a mere estimate of liability and that all events necessary to establish the taxpayer's liability had occurred in the tax years in question. The taxpayer's accrual of the commission expense was based on when the lot sales became cured. The selling price, percentage of commission, and indeed everything associated with the sale itself was definitely set at that time.

There are no remaining conditions precedent to liability. This is an important factor that distinguishes cases such as *Trinity, Clevite, Hughes, supra,* which all involved conditions precedent to liability, that is, the liability had not yet attached. The case at hand presents a different situation. Here, the parties have stipulated that CCI became obligated to pay a sales commission to the individual salesmen at the time each lot sale became cured.

The government relies on the lack of documentation as to when CCI and the salespeople viewed the debt as coming into existence, the fact the salespeople did not receive any portion of the commission until the buyer paid more than 10 percent of the price, and the fact that the amount of commission payments were dependent on how much the purchaser paid, to suggest that the liability for the commission is contingent. However, as was noted above, the parties agreed that the liability was treated by CCI as attaching at the time the sale was cured. In addition, the stipulated facts reveal that a purchaser was required to make a cash down payment of at least 10 percent at the time the sales contract was executed with the remainder financed by the plaintiff. When the period allowed by law for rescission passed, it was recognized by plaintiff for accounting purposes and plaintiff became obligated to pay a sales commission. The salesman was entitled to one-half of all amounts received by plaintiff from the sale in excess of 10 percent of the purchase price until the commission was fully paid.

This liability, however, is subject to being cut off by the default of the purchaser. If such a default occurs and collection efforts fail, there is a possibility that the salesman would not collect his full commission. This type of "condition" or "contingency" could more appropriately be termed a condition subsequent acting to divest or terminate payments. Clearly, the rule has long been that the "risk of collection in a credit transaction was not a condition defeating fixed liability." *W.S. Babcock Corp. v. Commissioner, supra; Ohmer Register Co. v. Commissioner, supra.* The Supreme Court pointed out that "[t]his potential nonpayment of an incurred liability exists for every business that uses an accrual method, and it does not prevent accrual.... The existence of an absolute liability is necessary; absolute certainty that it will be discharged by payment is not." *United States v. Hughes Properties, Inc.,* 476 U.S. at 606, 106 S.Ct. at 2099 (quoting *Helvering v. Russian Finance & Constr. Corp.,* 77 F.2d 324, 327 (2d Cir.1935)). Further,

the court noted that, if any of the events hypothesized by the government should occur, the deducted amounts would qualify as recaptured income subject to tax. *Id.* Treas.Reg. § 1.461–1(a)(2). The stipulation of facts reveals that CCI uses this method of recapturing previously deducted amounts in the event of purchaser default. Therefore, the taxpayer clearly has a right, absent use of the installment method of reporting income, to accrue and deduct the commission expense at the time the lot sale becomes cured.

The second issue is whether accrual and deduction of the commission expenses in light of the plaintiff's reporting of income on the installment basis resulted in an accounting method which did not clearly reflect income. The government argues that this combination of methods does not clearly reflect income and therefore, under section 446, the Commissioner has the discretion to require another method of accounting. 26 U.S.C. § 446.

Pursuant to section 446(a), a taxpayer is permitted to compute taxable income under the method regularly used in keeping his books. However, under section 446(b), if the method of accounting used by the taxpayer "does not clearly reflect income," the Commissioner may impose a method that "does clearly reflect income." In this regard, "[t]he Commissioner has broad powers in determining whether accounting methods used by a taxpayer clearly reflect income...." *Commissioner v. Hansen,* 360 U.S. 446, 467, 79 S.Ct. 1270, 1282, 3 L.Ed.2d 1360 (1959). However, the Commissioner does not have unfettered discretion. "It is a well-established principle that the Commissioner cannot require a taxpayer to change from an accounting method which clearly reflects income because the Commissioner considers an alternate method to more clearly reflect income." *Molsen v. Commissioner,* 85 T.C. 485, 498 (1985).

Defendant relies on language in the cases that suggests the accrual and deduction of commission expenses was only allowed because by so doing both sides of the ledger were treated alike, thus more clearly reflecting income. However, a close ex-

amination established that the cases cited by the defendant were based on the fact that all the income had been accrued in the same taxable period or was to be accrued at the time of sale. *See W.S. Babcock Corp. v. Commissioner, supra; Ohmer Register Co. v. Commissioner, supra; Lawyers Title Guaranty Fund v. United States, supra; Shelby Salesbook Co. v. United States,* 104 F.Supp. 237 (N.D.Ohio 1952). In the case at hand the taxpayer is utilizing a specific provision of the code that allows the taxpayer to spread its recognition of gain over a period of years. 26 U.S.C. § 453(a)–(c). In section 453 there is no corresponding provision stating that a taxpayer taking advantage of the installment method of reporting income must also deduct expenses on a different basis than one's normal accounting method.

The government suggests that by delaying the deduction of the expense until it is paid there would be a direct correlation between the income and expense. The court disagrees. To achieve a direct correlation between the income and the associated commission expense, it would be necessary to space the deduction of the expense over the entire term (10–15 years) of the contract.

The method used by the taxpayer has no correlation with the recognition of gain but is simply a method selected to insure the relatively speedy payment of commission expense. The salesman is entitled to one-half of all sums collected by the taxpayer until the commission has been paid in full. This point normally occurs within 16 to 19 months, while recognition of income continues for years after that.

As is noted in *Bittker,* the concept of matching and the use of one accounting method is qualified by specialized provisions assigning particular items to different taxable years than the taxpayer's overall accounting method would require. B. Bittker, *Federal Taxation of Income,* Estates and Gifts Vol. 4 § 105.1.5 (1981). This principle is readily applicable to the case at hand, where a specialized provision allows the taxpayer to spread its profit on the sale over the period of collections there-

by altering its overall method of accounting. The parties agree that, absent the specialized provision of the Code allowing for the installment method, all the income would be accrued at the time of the sale. "An accounting method that is explicitly authorized or prescribed by Congress cannot be rejected even if the IRS, on a sober evaluation of its impact, concludes that it does not clearly reflect income." *Id.* By arguing that because of the taxpayer's use of the installment method it cannot deduct the commission expense in the year the sale became cured, the government is in effect attempting to "penalize" the taxpayer for taking advantage of this provision. This is especially so in light of the court's finding that the liability for the commission expense was not contingent and therefore was deductible in the year the lot sale became cured.

In addition as plaintiff correctly notes, in the past a dealer was allowed to deduct expenses at the time the sale was made apparently without emphasis as to the method used to report income. (However, as plaintiff states, the regulation in question has been declared obsolete.) In *Frankenstein v. Commissioner*, 31 T.C. 431 (1958), *aff'd*, 272 F.2d 135 (7th Cir. 1959), *cert. denied*, 362 U.S. 918, 80 S.Ct. 670, 4 L.Ed.2d 738 (1960), the court stated that "[T]he respondent [Commissioner] has consistently provided that 'dealers' should deduct selling commissions and other sales expenses as ordinary business expenses in the year of accrual or payment, depending on the method of accounting, and that such expenses should not be spread over the period of installment payments." *Id.* at 436. (citations omitted). *See also The Highlands Evanston–Lincolnwood Subdivisions, Trust No. 1546*, 32 B.T.A. 760 (1935), *rev'd on other grounds*, 88 F.2d 355 (7th Cir.1937), *cert. denied*, 302 U.S. 691, 58 S.Ct. 11, 82 L.Ed. 534 (1937) (commissions on sales are business expenses to be deducted in the years of accrual or payment, according to whether the taxpayer is on the accrual or cash basis, and are to be deducted in arriving at net income).

■ Neither the plaintiff nor the defendant cite any case that specifically addresses the issue here. *J.C. Investments, supra*, appears to most closely discuss the situation, but also at issue in that case was whether the plaintiff was entitled to use the installment method and the court did not clearly decide this. However, the language of the court (quoted in the above discussion of this case) would suggest that it at least assumed that the commission expenses could be deducted all at once. And in view of the foregoing authority, the court believes that the taxpayer is entitled to utilize the installment method without altering the remainder of its accounting under the accrual method.

The defendant also presents the argument that the unpaid commission expenses had no present value to the salesmen. This position goes directly against the one taken by the government when it is seeking to tax the recipient. In *United States v. Murray*, 640 F.Supp. 89 (E.D.Tenn.1986), the court found that an agent's right to receive the commission constituted a property right that was subject to being levied upon. In *J.D. Real Estate Co. v. Commissioner*, T.C. Memo. 1985–69, 49 T.C.M. 763, Dec. 41, 886(M) (1985), the Internal Revenue Service took the position that commissions are not contingent, and, therefore, must be accrued and taken into income by the recipient, even if payable only out of future installment payments. The court accepted the government's argument noting that the recipient's right to receive the entire commission was fixed and unconditional when it completed performance of all its services.

For the reasons set forth above, the court finds that CCI was entitled to accrue and deduct the commission expense associated with the sale of lots that became cured in the taxable years in issue. As such, the court finds the plaintiff's motion for summary judgment should be granted and the defendant's cross-motion for summary judgment should be denied.

A separate order in accordance with the above will be concurrently entered.