## SOLLY K. FRANKENSTEIN AND JULIA E. FRANKENSTEIN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 58106, 65685.    Filed November 20, 1958.

*Dan C. Flanagan, Esq.*, for the petitioners.
*Bernard J. Boyle, Esq.*, for the respondent.

## OPINION.

Van Fossan, *Judge:* The first question is whether profits derived from the sale of lots during the years here at issue were gains from the sale of capital assets, or were income from property held primarily for sale to customers in the ordinary course of business.

Petitioner contends that the lots were held for investment and that their sale resulted in long-term capital gains.[1] Respondent determined that the lots were held by petitioner primarily for sale to customers in the ordinary course of business, as defined in the exclusion from capital assets,[2] and that the profits were therefore taxable as ordinary income.[3]

---

[1] Sec. 117 (a), I. R. C. 1939 ; sec. 1221, I. R. C. 1954.

[2] Sec. 117 (a) (1) (A), I. R. C. 1939 ; sec. 1221 (1), I. R. C. 1954.

[3] Sec. 22 (a), I. R. C. 1939 ; sec. 61 (a), I. R. C. 1954.

The issue is one of fact and depends upon all the pertinent facts when placed in proper juxtaposition and given their relative importance. A number of tests have been developed by the courts for making such determinations. Among the matters to be inquired into are the taxpayer's purpose in acquiring and disposing of the property; the continuity of sales activity; the number, substantiality, and frequency of sales; and the owner's activity in developing the property and his efforts to sell. *W. T. Thrift, Sr.*, 15 T. C. 366 (1950); *Boomhower* v. *United States*, 74 F. Supp. 997 (D. Iowa, 1947). No one fact is conclusive.

Petitioner inherited some lots and purchased a number of others, mostly in the city of Fort Wayne. He both purchased and sold real estate in each of the years 1945 through 1955. During the years 1941 through 1954 he purchased 981 parcels of real estate, exclusive of rental properties, 845 of these parcels being acquired in the years 1946, 1947, 1948, and 1949, and being purchased by petitioner at various auctions held by the auditor of Allen County, Indiana. Others were purchased at regular tax sales. Petitioner continued to purchase even as he sold. In 1950 he purchased 12 parcels while selling 41 lots; in 1951 he purchased 58 parcels while selling 53 lots; in 1952 he purchased 6 parcels while selling 43 lots; in 1953 he purchased 9 parcels while selling 62 lots; and in 1954 he purchased 5 parcels while selling 48 lots. Petitioner's income tax returns indicate that the great majority of the lots sold were conveyed as single parcels in separate transactions. Clearly, his real estate dealings were frequent and substantial and indicative of a continuing business activity, rather than the performance of single disconnected acts. *Boomhower* v. *United States, supra.*

Petitioner testified at the trial that he devoted at least 48 hours a week to the practice of law. However, his income tax returns show that during each of the years here at issue his gains from the sale of real estate greatly exceeded his income from the practice of law. This disparity must be given significance. *Gamble* v. *Commissioner*, 242 F. 2d 586 (C. A. 5, 1957). It is self-evident that even though he may have expended 48 hours a week upon his law practice, he nonetheless found time to devote whatever efforts were needed to carry on his real estate activity.

Petitioner urges that his failure to advertise extensively is strong evidence that he was holding the lots as an investment. His promotional activities were limited to erection of homemade "For Sale" signs upon some of the lots and to advertising in 1948 and 1949 and part of 1950 in a Fort Wayne paper. However, where there is a seller's market, such as petitioner enjoyed, it is not essential that

active sales promotion be demonstrated in order to prove that a taxpayer is engaged in the business of selling real estate. *Arthur E. Wood*, 25 T. C. 468 (1955). It should also be noted that in 1948 and 1949, the years during which he advertised in the Fort Wayne Journal Gazette, he purchased 347 and 104 parcels of real estate in such respective years.

Petitioner points out that he never held a real estate license and that he made no effort to improve the lots other than to pay for improvements required by public resolution. However, in the light of the record as a whole we do not regard these factors as controlling.

After careful consideration of all the evidence we are of the opinion that petitioner held the lots for sale to customers in the ordinary course of business. He made substantial sales over a period of years. Even as he sold, he purchased other real estate, lending continuity to his activities. He placed "For Sale" signs on some lots and for more than 2 years advertised in the "Real Estate For Sale" column of a Fort Wayne paper. Such activities are indicative of a continuing business enterprise. We therefore hold that respondent correctly determined profits from the sale of the lots to be taxable to the petitioner as ordinary income.

The second issue before us is whether petitioner is entitled to add the estimated but unpaid expense of acquiring abstracts to the cost of property sold under conditional sale contracts.

Petitioner did not receive abstracts with the lots acquired at Allen County auctions or at tax sales. In the majority of cases he purchased abstracts for these lots when they were sold. Some of the lots were sold under conditional sale contracts providing that he was to furnish abstracts when the final payment was made.

As we understand it, petitioner, on his income tax returns for the years here in question, reported these conditional sale contracts as installment sales. For the purpose of computing the amount of gain to be realized each year on various of the sales contracts, he included as an expense of sale the estimated cost of preparing abstracts for the property sold. The effect of this treatment was to spread the estimated cost of the abstracts over the terms of the respective contracts.

Section 44 of the Internal Revenue Code of 1939 [4] provides, *inter alia*, that when a sale or other disposition of real property is made in which the initial payments do not exceed 30 per cent of the selling price, there may be returned as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.

---

[4] The corresponding provisions of the Internal Revenue Code of 1954 are found in section 453.

It has been held repeatedly that when real estate is sold by one not a dealer, and the profit is reported on the installment method, the expenses incident to the sale serve to reduce the selling price in determining the profit to be realized, such expenses thus being spread over the same period as the installment payments, and not being deductible in full in the year of sale. *Mrs. E. A. Giffin*, 19 B. T. A. 1243 (1930); *D. F. McCrimmon*, 20 B. T. A. 384 (1930); *J. Edward Sullivan*, 23 B. T. A. 147 (1931).

However, the respondent has consistently provided that "dealers" should deduct selling commissions and other sales expenses as ordinary business expenses in the year of accrual or payment, depending on the method of accounting, and that such expenses should not be spread over the period of the installment payments. *The Highlands, Trust No. 1546*, 32 B. T. A. 760 (1935), reversed on other grounds 88 F. 2d 355 (C. A. 7, 1937), certiorari denied 302 U. S. 691. See I. T. 2305, V-2 C. B. 108; art. 352, Regs. 74 and 77; art. 44-2, Regs. 86, 94, 101; sec. 19.44-3, Regs. 103; sec. 39.44-2, Regs. 118; and sec. 1.453-4, Income Tax Regs. under I. R. C. 1954.

We have already determined that the petitioner in the case at bar was in the business of selling real estate; he was also a cash basis taxpayer. We are therefore of the opinion that those abstract expenses which had not been paid or incurred but merely estimated may not be included in the cost of sale for the purposes of computing gross profit.

The next issue is whether respondent correctly determined petitioner to be liable for self-employment tax for each of the years 1951 to 1954, inclusive. Respondent computed self-employment tax on the income from the realty business for each of these years.

Petitioner is a lawyer. Section 481 (c) (5) of the Internal Revenue Code of 1939 and section 1402 (c) (5) of the Internal Revenue Code of 1954 as applicable to 1954, exclude from self-employment tax all net earnings gained from the performance of service by an individual "in the exercise of his profession as a * * * lawyer." However, we have determined that petitioner was also in the business of selling real estate. He is, therefore, required to pay self-employment tax on his earnings as a real estate dealer. *Joseph M. Philbin*, 26 T. C. 1159 (1956).

Respondent determined an addition to petitioner's tax under section 294 (d) (2) of the Internal Revenue Code of 1939 in the amount of $1,572.23 for the taxable year 1954. Petitioner alleged error as to this determination. However, the issue was not mentioned at the hearing, nor was any evidence submitted in support of petitioner's allegation. In the absence of evidence to the contrary, respondent's determination must be sustained, subject to a recomputation to reflect concessions made by the respondent at the hearing.

As to all other issues raised in the pleadings there is almost complete failure of proof. These issues, therefore, must be resolved in favor of respondent, subject to any relevant concessions made by the respondent at the hearing.

*Decisions will be entered under Rule 50.*