PAUL K. ASHBY AND GRETCHEN G. ASHBY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82050. Filed October 26, 1961.

*Thomas B. Roberts, Esq.*, for the petitioners.
*Donald W. Wolf, Esq.*, for the respondent.

BRUCE, *Judge:* This proceeding involves deficiencies in Federal income tax for the years 1955 and 1956 in the amounts of $125.59 and $133.65, respectively. After certain concessions by petitioners the

sole issue remaining is whether the amounts of $382.17 and $653.85, which represent a 4-percent statutory penalty received by petitioner in 1955 and 1956, respectively, upon redemption of certain parcels of real estate purchased by petitioner at delinquent tax sales and held for more than 6 months, constitute capital gain or ordinary income.

FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference.

Paul K. and Gretchen G. Ashby, husband and wife, are residents of Des Moines, Iowa, and filed their joint Federal income tax returns on the cash receipts and disbursements basis of accounting for the years 1955 and 1956 with the district director of internal revenue for the district of Iowa.

Paul K. Ashby, hereinafter referred to as the petitioner, has been in the real estate business for approximately 30 years and is a licensed real estate broker regularly employed by Paul C. Shay Realty Co., Des Moines, Iowa. Petitioner started attending delinquent tax sales in approximately 1949 to 1950. During the years 1951, 1952, 1953, 1954, and 1955 petitioner successfully bid for the following number of parcels of real property in the total amounts as stated:

| Year | Number of parcels bid for | Total amounts bid |
|------|---------------------------|-------------------|
| 1951 | 1 | $40.47 |
| 1952 | 8 | 548.12 |
| 1953 | 39 | 2,680.65 |
| 1954 | 115 | 7,811.13 |
| 1955 | 77 | 6,768.66 |

The above schedule relates only to the purchases and redemptions involved herein, and does not include purchases which were redeemed within 6 months or purchases which were not redeemed but for which petitioner obtained deeds after the expiration of the redemption period.

Such delinquent tax sales were conducted by Polk County, Iowa, in full compliance with the applicable provisions of the Iowa statutes, Iowa Code, ch. 446 (1954), relating to tax sales held for the purpose of statisfying claims of said county for delinquent general taxes assessed against real estate together with interest and costs due and unpaid thereon. The sale is awarded to the first bidder who offers to pay the amount of taxes, interest, and other charges that are due. Upon successfully bidding for a parcel of real property petitioner received a certificate of purchase therefor, subject to the right of redemption upon the payment of the amount originally paid by petitioner, plus 4-percent penalty, plus 6-percent interest per annum on the whole amount, including subsequent taxes paid thereon.

In bidding for properties at delinquent tax sales petitioner's idea was not that he would own them, but that delinquent taxpayers would redeem them. Petitioner's sole objective in purchasing such properties was to obtain profit from the 4-percent penalty and the 6-percent interest.

Shortly after the tax sales, petitioner contacted the delinquent owners to have them redeem their property. Approximately 60 percent of the delinquent owners redeemed their property within 6 months after the tax sales held in December of 1952, 1953, 1954, 1955, and 1956. Virtually all of the parcels of real property were redeemed, but occasionally, when certain parcels were not redeemed, petitioner surrendered the certificate of purchase to the Polk County treasurer and was issued a tax deed after the expiration of the periods provided for by statute.

During the years 1955 and 1956, 111 and 129 parcels of real estate, respectively, were redeemed by the delinquent owners thereof by making payment to the auditor of Polk County, Iowa, of the amounts for which such parcels were sold plus 4 percent of such amount as a penalty, with 6-percent interest per annum on the whole amount from the date of sale, plus the amount of all general taxes paid by petitioner on any of said parcels for any subsequent year or years, with a similar penalty added to the amounts of the payments for each subsequent year and 6-percent interest per annum on the total amount from the time of payment. All of these redemptions occurred more than 6 months after the dates on which petitioner purchased the redeemed parcels at tax sales and more than 6 months after the date on which he paid the general taxes assessed against such parcels for the year or years subsequent to the year for which the general taxes involved in the tax sales were assessed. The aforementioned amounts originally bid by petitioner and subsequent taxes paid by him as well as penalties and interest thereon for the years 1955 and 1956 were as follows:

| Year | Amount bid | Taxes for subsequent years | Interest | Penalty |
|------|-----------|---------------------------|----------|---------|
| 1955 | $7,847.52 | $1,843.47 | $612.47 | $382.17 |
| 1956 | 10,001.51 | 6,485.36 | 1,374.54 | 653.85 |

During the years 1955 and 1956 petitioner received payments from the Polk County auditor in the respective amounts of $22,140.57 and $23,753.34, plus interest of 6 percent, as a result of the redemption of real property successfully bid for at tax sales in the respective amounts of $21,289 and $22,839.75.

The profits resulting from the aforementioned redemptions were reported by petitioners on their joint tax returns for the years 1955 and 1956 as follows:

| Year | Interest income (6-percent interest) | Long-term capital gain (4-percent penalty) |
|---|---|---|
| 1955 | $1,122.61 | $851.57 |
| 1956 | 2,683.78 | 913.59 |

Respondent determined that the amounts of $851.57 and $913.59 constituted ordinary income rather than capital gain. Petitioners now concede that the amounts of the 4-percent statutory penalty in excess of $382.17 and $653.85 for the years 1955 and 1956, respectively, are ordinary income.

The amounts of $382.17 and $653.85, representing a 4-percent statutory penalty received by petitioner upon redemption of certain parcels of real property by the owners thereof during the years 1955 and 1956, said parcels having been bid for by petitioner at delinquent tax sales more than 6 months earlier, constitute ordinary income.

OPINION.

Iowa law provides for the collection of delinquent taxes by the sale of any real property upon which they are a lien. Such property is offered for sale annually for the total amount of taxes, interest, and costs due and upaid thereon. Upon payment of the amount bid to the treasurer, the person purchasing is issued an assignable "certificate of purchase." Real property sold in such manner is subject to the right of redemption by the payment to the auditor, to be held by him subject to the order of the purchaser, of the amount for which the same was sold and subsequent taxes paid thereon, plus 4 percent of such amount as a penalty, with 6-percent interest per annum on the whole amount. Notice may be served after 2 years and 9 months from the date of sale, and if the right of redemption is not exercised after the expiration of 90 days from the date of completed service the treasurer shall make out a deed for such sold and unredeemed property and deliver it to the purchaser upon the return of the certificate of purchase. Upon the proper execution and recording of such deed all the right, title, interest, and estate in and to the land conveyed shall vest in the purchaser, subject only to certain specified claims adverse to tax title. Iowa Code, chs. 446, 447, and 448 (1954).

The sole issue presented concerns the taxability of the 4-percent penalty received by petitioner upon redemption of properties purchased by him at delinquent tax sales and held by him for more than 6 months. Petitioner contends that the property interest represented by the certificate of purchase constitutes a capital asset under section 1221, I.R.C. 1954, and that the 4-percent penalty paid to petitioner

upon the redemption thereof constitutes capital gain under section 1222. Respondent contends that the certificates of purchase were not "capital assets" as defined by section 1221, and that even assuming they were capital assets, there was no "sale or exchange" within the meaning of section 1222, and, therefore, the amounts received by petitioner constituted ordinary income. These statutes, so far as relevant, are set forth in the margin.[1]

We agree with respondent, under the facts and circumstances presented herein, that the certificates of purchase or the interests evidenced by them, which are involved herein, were not "capital assets," as defined by section 1221, and consequently there was no "sale or exchange of a capital asset" within the meaning of section 1222, such as would entitle petitioner to capital gains treatment of the gain realized by him upon redemption by the owners of the real estate involved.

Section 1221(1) provides that "the term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, *or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.*" (Emphasis supplied.) We need not determine whether the certificates of purchase, or the interest represented by them, were "property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year," as suggested in the alternative by respondent, for, in our opinion, petitioner was clearly in the business of buying tax liens, with the expectation of realizing gain from the redemption or other disposition thereof (cf. *Intercounty Operating Corporation*, 4 T.C. 55), and assuming, for the purposes of this case but without determining, that the certificates of purchase or the interest evidenced by them were "property" and that the redemptions by the owners of the real estate involved were "sales," as contended by petitioner, it is clear that such certificates of purchase or

---

[1] SEC. 1221. CAPITAL ASSET DEFINED.

For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

SEC. 1222. OTHER TERMS RELATING TO CAPITAL GAINS AND LOSSES.

For purposes of this subtitle—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(3) LONG-TERM CAPITAL GAIN.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income.

interests were "held" by petitioner "primarily for sale to customers in the ordinary course of his trade or business" and accordingly were not "capital assets" within the meaning of section 1221(1).

In determining whether or not property was held primarily for sale to customers in the regular course of a taxpayer's trade or business, the courts have evolved a number of criteria among which are the intent of the seller with respect to the particular asset or assets in question; the purpose for which the property was acquired, held, and sold; the volume, frequency, continuity, and substantiality of the sales; the proximity of sale to purchase; and the extent of sales activity on the part of the seller or his agents. These factors are to be viewed in the light of all the facts and no single factor is controlling. *Eline Realty Co.* 35 T.C. 1; *W. T. Thrift, Sr.*, 15 T.C. 366; *Boomhower* v. *United States*, 74 F. Supp. 997 (N.D. Iowa). Equally material to a proper consideration of the question is a recognition of the fundamental objective of the capital gains provisions of the Code, that is, to grant preferential treatment to gains realized upon those transactions which are not normally the source of business income. Referring to these objectives, the Supreme Court, in *Corn Products Co.* v. *Commissioner*, 350 U.S. 46, 52, stated:

Since this section [sec. 117, I.R.C. 1939] is an exception from the normal tax requirements of the Internal Revenue Code, the definition of a capital asset must be narrowly applied and its exclusions interpreted broadly.

Petitioner is a licensed real estate broker and has been in the real estate business for approximately 30 years. He began attending delinquent tax sales in 1949 or 1950. During the years 1951, 1952, 1953, 1954, and 1955, he was the successful bidder and received certificates of purchase on 1, 8, 39, 115, and 77 parcels of real property, respectively. During the years 1955 and 1956, 111 and 129 parcels, respectively, on which petitioner had held certificates of purchase for more than 6 months, were redeemed by the delinquent owners of the real estate. The 4-percent penalty receipts in issue were derived from these redemptions.

It is quite clear from the record presented that petitioner acquired the certificates of purchase at delinquent tax sales with the intent of having them redeemed by the delinquent taxpayers as soon as possible. His primary objective was to make the profit represented by the 4-percent penalty, with the 6-percent interest as an ancillary objective. With this in mind he contacted the delinquent taxpayers shortly after the tax sales and suggested early redemption. He was not interested in waiting passively for the expiration of the substantial period of time (approximately 5 years) necessary to secure a tax deed and clear title. He took active steps to procure an early redemption. Approximately 60 percent of all the delinquent owners whose properties

were sold in 1952 to 1956, inclusive, and for which petitioner received certificates of purchase, redeemed their properties within 6 months of the tax sales. The redemptions involved (111 in 1955 and 129 in 1956) were made more than 6 months after the tax sales but apparently before the expiration of the 3-year period when petitioner would have been entitled to a tax deed. The redemptions were frequent and continuous. They were not casual transactions, but very much a part of petitioner's trade or business of purchasing and disposing of interests in delinquent tax properties. While the tax sales occurred only once annually, the redemptions were more frequent, as was petitioner's contacting of the delinquent owners. Petitioner also testified he contacted owners prior to the tax sales, apparently for the purpose of ascertaining the probabilities of early redemption. The total effect of all his activities compels the conclusion that he was in the trade or business of buying and disposing of tax liens and that the property interests acquired by him at the tax sales were held by him primarily for sale to customers in the ordinary course of his trade or business. Whether or not such activity was a part of his regular employment as a real estate broker is immaterial; it is well established that a person may be engaged in more than one business at the same time. *Joseph M. Philbin*, 26 T.C. 1159; *Friend* v. *Commissioner*, 198 F. 2d 285 (C.A. 10, 1952), affirming a Memorandum Opinion of this Court. Nor is it material that the business or occupation in question does not take all his time or is seasonal and not active the year round. *Snell* v. *Commissioner*, 97 F. 2d 891, affirming a Memorandum Opinion of the Board of Tax Appeals. He devoted whatever time was necessary to carry on the business. *Solly K. Frankenstein*, 31 T.C. 431, affd. 272 F. 2d 135, certiorari denied 362 U.S. 918.

Finally, there is no merit in petitioner's argument that the delinquent owners who redeemed their properties were not "customers" within the meaning of section 1221(1). While it is true the "redemption" was limited to the owners of the real estate or one having a redeemable interest therein, for the purposes of this case, they were nevertheless "purchasers" of the outstanding tax liens and therefore "customers." The fact that the owner of the real estate was the most likely purchaser and that in him petitioner had a readymade market did not prevent such a purchaser from being a customer. Moreover, petitioner could have assigned the certificates of purchase to others prior to redemption. Sec. 446.31, Iowa Code. Such an assignment has been held to be a "sale," *Ellis* v. *Peck*, 45 Iowa 112, and the assignee a "purchaser," *Light* v. *West*, 42 Iowa 138. Or, in the event the owner did not redeem, as occurred in some instances not here involved, petitioner could have procured a tax deed and thereafter sold

the real estate to anyone who wished to buy it. Petitioner purchased the tax liens with a view to "resell" or dispose of them for a profit. This objective continued until ultimate disposition of petitioner's interest, either through redemption by the delinquent owner, assignment of the tax certificate, or, in the event he obtained a tax deed, by sale of the real estate involved to others. Regardless of which occurred, petitioner held the property primarily for sale to customers in the ordinary course of his trade or business, and the gains realized therefrom constituted ordinary income.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

TIETJENS, *J.*, concurring: In my opinion, the redemption of the certificates of purchase by the property owners was not a sale or exchange of such certificates and the gains realized by petitioner on his transactions constituted ordinary income. See *Kanawha Valley Bank*, 4 T. C. 252.

WITHEY, FISHER, MULRONEY, and DRENNEN, *JJ.*, agree with this concurring opinion.