FIDELITY ASSOCIATES, INC., JAMES P. CHERRY, SR., TAX MATTERS PERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fidelity Assoc., Inc. v. Commissioner
Docket No. 19277-88
United States Tax Court
T.C. Memo 1992-142; 1992 Tax Ct. Memo LEXIS 195; 63 T.C.M. (CCH) 2327; T.C.M. (RIA) 92142; March 10, 1992, Filed *195 Decision will entered for petitioner David M. Furr and Joseph B. Alala, Jr., for petitioner. Ross A. Rowley and Paul G. Topolka, for respondent. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: This is a proceeding pursuant to sections 6226-6231 [1] for a readjustment of subchapter S items of Fidelity Associates, Inc., [2] an S corporation, for the taxable year ending December 31, 1983. The issues for decision are: (1) Whether petitioner is entitled, under section 446(a), to deduct paid and accrued commission expenses concerning sales, some of which will not be accrued or reported in the same year; (2) whether respondent, under section 446(b), abused his discretion in changing petitioner's method of accounting; and (3) whether petitioner is entitled to a section *196 481 adjustment regarding its 1983 taxable income. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by this reference. At the time he filed the petition in this case, James P. Cherry, Sr., tax matters person, resided in Gastonia, North Carolina. Fidelity Associates, Inc., is a North Carolina corporation and was incorporated on March 24, 1982. With respect to its initial taxable year ending December 31, 1982, petitioner was an electing small business corporation. For its taxable year ending December 31, 1983, petitioner was an S corporation under section 1361. Petitioner maintains its principal place of business in North Carolina. During the years 1982 and 1983, petitioner engaged in the business of selling schoolbooks and bereavement books. [3] It, however, did not commence selling bereavement books until 1983. *197 The schoolbooks petitioner sold covered a limited subject matter and were intended for use by elementary school children. The bereavement books it sold were inspirational in nature and were intended for families of recently deceased persons. Petitioner's school and bereavement books were sold pursuant to sponsorship contracts. Under the sponsorship contract, petitioner agreed to identify the sponsor in all schoolbooks or bereavement books sold under the contract. One of the reasons sponsors entered into these contracts was to gain the benefit of the advertising and goodwill. Also, under schoolbook sponsorship contracts, petitioner provided each student, teacher, and principal at a specified school or schools with a copy of a particular schoolbook in each of two successive school years. Under the bereavement book sponsorship contracts, petitioner provided a particular bereavement book to the immediate family of each person dying within a specified geographical area during the 2-year period. The sponsorship contracts were procured by petitioner's commissioned sales representatives. Petitioner provided its sales representatives with preprinted sponsorship contract forms. With *198 respect to sponsorship contracts, a sponsor could elect to pay the total contract price upon execution of the sponsorship contract or in installments payable during a 2-year contract term. The amount to be paid under a schoolbook sponsorship contract was based on a specified price per book shipped. The amount to be paid under a bereavement book sponsorship contract was calculated by multiplying the population living in a geographical area by a specified actuarial factor. The initial calculation of the contract price on a schoolbook sponsorship contract was accomplished by counting the students, teachers, and principals who would receive books under the contract during the first year. It was then assumed that the number of books shipped during the second year would be the same. If the total number of schoolbooks actually provided by petitioner did not materially differ from the numbers used in the initial calculation, no adjustment would be made to the total contract price. If the total number of books actually provided differed materially from the numbers used in the initial calculation, an appropriate adjustment was made to the total contract price. This adjustment was accomplished *199 by an additional billing or refund to the sponsor during the contract's second year. Petitioner paid commissions to its sales representatives for their procurement of sponsorship contracts with respect to schoolbooks and bereavement books. With respect to sponsorship contracts relating to schoolbooks, it paid commissions to the procuring sales representatives and to the sales representatives who were the managers of the procuring sales representatives. With respect to sponsorship contracts relating to bereavement books, commissions were paid only to the sales representatives who actually procured the contracts. The commissions were paid pursuant to an oral agreement [4] between petitioner and the sales representatives. The agreement provided that commissions calculated according to a written formula would be paid immediately upon petitioner's approval of a sponsorship contract. Once paid, the commissions were not refundable. In the event that petitioner was unable to collect the total contract price from a sponsor, it did not have a legal right (and did not attempt) to recoup the commission from the sales representative. *200 Petitioner paid commissions to sales representatives promptly after approval of a sponsorship contract. Generally, a sponsorship contract would be approved, and the related commission would be paid the day after the contract was submitted by the sales representative. Petitioner maintained inventories of the school and bereavement books. In computing cost of goods sold, petitioner did not value its inventory under the LIFO method, but instead valued closing inventory using the lower of cost or market method. It employed an accrual method of accounting. Although payments, in many cases, were received in installments over a 2-year period, petitioner did not elect for tax purposes to report its book sale income under the installment method. Under petitioner's accrual method, book sale income was accrued as the books were shipped. On its Federal income tax returns, petitioner claimed a deduction for the accrued amount of book sale commission expenses. All of the commission expenses had been paid during the taxable year. For financial accounting purposes, petitioner's book sale income was accounted for in the same manner as it reported such income for tax purposes. Petitioner *201 accounted for the book sale commissions for financial accounting purposes differently from the way in which it reported such expenses for Federal tax purposes. For financial accounting purposes, the commissions paid were recorded as expenses at the same rate as the book sale income to which the commissions related was recorded in the financial records. For example, on its 1982 and 1983 Federal income tax returns, petitioner accrued and deducted commission expenses of $ 146,561 and $ 431,212, respectively. On its financial records pertaining to 1982, commission expenses taken into account and reflected were $ 44,197. The remaining $ 102,364 of commissions paid in 1982 was shown as "prepaid" or "deferred" commissions outstanding as of December 31, 1982. Similarly, on petitioner's 1983 financial records, commission expenses taken into account were $ 207,690, and the remaining $ 325,886 of commissions paid in 1982 and 1983 but not yet reflected as expensed in 1982 or 1983 was shown as "prepaid" or "deferred" commissions outstanding as of December 31, 1983. Petitioner's books and records are sufficient to permit a reconciliation of the differences in treatment of its commission expenses *202 for financial accounting purposes and tax purposes. For any taxable year, the amount of commissions taken into account and expensed on financial records may be determined by adding to the commissions deducted for such year for tax purposes the amount of "prepaid" or "deferred" commissions reflected as of the beginning of the year, and then subtracting the amount of "prepaid" or "deferred" commissions reflected as outstanding as of the end of the year. In the Notice of Final S Corporation Administrative Adjustment, respondent determined that $ 223,522 of the $ 431,212 of commission expenses which had been deducted by petitioner on its Federal income tax return for 1983 were not allowable. This adjustment represented the excess of: the $ 325,886 of "prepaid" or "deferred" commission reflected as of December 31, 1983, on petitioner's financial records over the $ 102,364 of "prepaid" or "deferred" commissions reflected as of the beginning of 1983 on its financial records. The notice contained the following explanation for the adjustment: It is determined that the method you are using to deduct commission expenses for the sale of books does not match revenue with expenses. The *203 $ 223,522.00 of prepaid commissions that you expensed for tax purposes should be matched with the revenue related to the commission expenses and included as an expense in the same period that the revenue is recognized. Accordingly, taxable income is increased $ 223,522 for tax year ended December 31, 1983.
By way of an amendment to answer, respondent asserted that an adjustment under section 481 should be made to petitioner's taxable income for 1983. OPINION The issues in this case concern tax accounting. We will consider whether the conformity requirement of section 446(a) is absolute, as argued by respondent. We will also consider whether, under section 446(b), petitioner's particular method of income clearly reflects income. Section 446(a) requires that taxable income be computed by a taxpayer under the method of accounting it regularly uses in keeping its books. The term "method of accounting" includes not only a taxpayer's overall method of accounting but also its accounting treatment of any item. Sec. 1.446-1(a)(1), Income Tax Regs.Section 446(b) further provides that where the method of accounting utilized by the taxpayer does not clearly reflect taxable income, *204 the computation of taxable income shall be made under such method as, in respondent's opinion, does clearly reflect income. Petitioner asserts that respondent improperly changed its method of accounting to disallow the current deduction of its commission expenses which were incurred and paid in 1983. Petitioner contends that its method of accounting clearly reflects its income and is an acceptable method that is fully consistent with the requirements of the Internal Revenue Code and Treasury regulations. Respondent, on brief, concedes that (under the accrual method of accounting) the all-events test has been met in this case so that the disputed commission expenses would otherwise be deductible. Respondent, nevertheless, maintains that pursuant to section 446(b), he properly changed petitioner's method of accounting. Respondent alternatively claims that petitioner, contrary to section 446(a), treated the commissions for tax purposes differently from the way the company regularly accounted for the expenses in keeping its books. Respondent's primary position, however, is that the current deduction of commission expenses results in a mismatching of book sales income and related *205 commission expenses and does not clearly reflect petitioner's taxable income. A. Generally
It is well recognized that respondent is granted broad discretion under section 446(b). In reviewing changes in accounting method under section 446(b), a taxpayer has a heavy burden of establishing that respondent did, in fact, abuse his discretion. Prabel v. Commissioner, 91 T.C. 1101, 1111-1112 (1988), affd. 882 F.2d 820 (3d Cir. 1989). Respondent's adjustments under section 446(b) must be shown to be "clearly unlawful" or "plainly arbitrary". Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979); Prabel v. Commissioner, 91 T.C. at 1112. Where, however, a taxpayer's method of accounting is an acceptable method, respondent has not been allowed to arbitrarily require a change. Respondent may not reject, as not providing a clear reflection of income, a method of accounting employed by the taxpayer which is specifically authorized by the Internal Revenue Code or Treasury regulations and which has been applied on a consistent basis. Prabel v. Commissioner, supra at 1112; *206 Hallmark Cards, Inc. v. Commissioner, 90 T.C. 26, 31 (1988). [5]
*207 B. Section 162 - Would the Commissions Be Deductible?
Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred during a taxable year in carrying on any trade or business. Commissions paid by dealers in connection with sales of inventory or property held by them primarily for sale to customers in the ordinary course of their business are ordinary and necessary business expenses, rather than capital expenditures. E.g., sec. 1.263(a)-2(e), Income Tax Regs.[6]
Additionally, and by way of analogy, where a dealer elects to report income under the installment method, the commissions may be currently deducted *208 in the year of accrual or payment. Frankenstein v. Commissioner, 31 T.C. 431, 436 (1958), affd. 272 F.2d 135 (7th Cir. 1959); The Highlands, Trust No. 1546 v. Commissioner, 32 B.T.A. 760, 766-767 (1935), revd. and remanded on other grounds 88 F.2d 355 (7th Cir. 1937); Cooper Communities, Inc. & Subsidiaries v. United States, 678 F. Supp. 1408 (W.D. Ark. 1987). In Frankenstein v. Commissioner, 31 T.C. at 436, we stated that "respondent has consistently provided that 'dealers' should deduct selling commissions and other sales expenses as ordinary business expenses in the year of accrual or payment, depending on the method of accounting, and that such expenses should not be spread over the period of the installment payments." See and compare sec. 15A.453-1(b)(2)(v), Temporary Income Tax Regs., 46 Fed. Reg. 10708 (Feb. 4, 1981), and 46 Fed. Reg. 48920 (Oct. 5, 1981). Further, commissions and other selling expenses are not costs related to the acquisition or production of a dealer's inventory or property held for resale. Dealers are not required *209 to include commissions and other selling expenses in their inventoriable costs. [7]
Under the cash method of accounting, business expenses "shall, as a general rule, be taken into account for the taxable year in which paid." Sec. 1.461-1(a)(1), Income Tax Regs. Under the accrual method of accounting, a business expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined *210 with reasonable accuracy. Sec. 1.461-1(a)(2), Income Tax Regs. See sec. 1.446-1(c)(1)(ii), Income Tax Regs.; United States v. Hughes Properties, Inc., 476 U.S. 593, 599-600 (1986). Under section 461, deductions are to be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income. However, section 461 continues to require that a taxpayer's method of accounting clearly reflect income. Prabel v. Commissioner, 91 T.C. at 1114-1115; Sandor v. Commissioner, 62 T.C. 469, 478 (1974), affd. per curiam 536 F.2d 874 (9th Cir. 1976). The commissions here are ordinary, necessary, and meet the requirements of the all-events test. Further, these commissions were accrued and paid during the taxable years and are not capital in nature or effect. Accordingly, we hold that the commission deductions claimed by petitioner would otherwise be deductible. Even though petitioner's claimed deductions satisfy all other Code requirements, respondent, under his section 446 authority, questions petitioner's entitlement to a current deduction of the entire amount *211 of commissions paid during the taxable year. Respondent argues that petitioner has failed to meet the conformity requirement of section 446(a) and the clear-reflection standard of section 446(b) due to a mismatching of income and expenses. B. Section 446(a) - Conformity Requirement
Section 446(a) provides the general rule that "Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Respondent's position is that section 446(a) literally requires absolute conformity so that taxable income must be synonymous with a taxpayer's book income. Respondent's position boils down to one where taxpayers would be required to use the same method of accounting, without any variations for tax and financial purposes, unless respondent requires otherwise. This seems somewhat anomalous from respondent's usual position in this type of case. Usually, respondent utilizes section 446 to require a taxpayer to change the method of accounting for tax purposes, which results in the taxpayer's having separate methods for financial and tax purposes. See First Federal Savings & Loan Association of Temple v. United States, 694 F. Supp. 230, 236 (W.D. Tex. 1988), *212 affd. 887 F.2d 593 (5th Cir. 1989). In the setting of this case, respondent is attempting to require petitioner to use the same method for tax purposes that is used for financial purposes. We refuse to adopt respondent's interpretation because it is inconsistent with the regulations interpreting section 446 and because it would result in anomalous results. Initially, we consider the meaning of the language of section 446(a). As used in section 446(a), the term "books" is not strictly defined. In this connection, sections 1.446-1(a)(4) and 6001-1(a), Income Tax Regs., merely require that a taxpayer or any person required to file a return, "keep such permanent books of account or records * * * sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return". Sec. 6001-1(a), Income Tax Regs.Section 1.446-1(a)(4), Income Tax Regs., contains the elaboration that "Accounting records include the taxpayer's regular books of account and such other records and data as may be necessary to support the entries on his books of account and on his return, as for example, a reconciliation of any differences *213 between such books and his return." See also First Federal Savings & Loan Association of Temple v. United States, 694 F. Supp. at 236-238. See further Public Service Co. of N.H. v. Commissioner, 78 T.C. 445, 452-453 (1982). Implicit in this regulatory language is the recognition of the potential for variations or differences between financial and tax reporting and the need for an ability to reconcile any such differences. Admittedly, petitioner treats the commissions differently for tax purposes from the way it treats such expenses for financial accounting purposes. However, it is well recognized that tax accounting requirements may diverge from financial accounting standards and that financial accounting standards are not controlling for tax purposes. Moreover, numerous situations exist where the tax code requires a different treatment for tax purposes, irrespective of the method of financial accounting used by the taxpayer. The possibility of divergence results from the different objectives of tax accounting, as opposed to financial accounting. See Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 541-544 (1979). *214 For example, Federal income taxes may be deductible to determine financial net income, whereas Federal income taxes are specifically not deductible in arriving at taxable income (the rough equivalent of financial net income). Numerous other required differences between financial and tax accounting may be found in the Internal Revenue Code and the regulations. Petitioner uses the accrual method of accounting [8] for tax purposes. Under that method, petitioner would not have a basis for postponing the deduction of the commission expenses which were incurred during a taxable year to a subsequent taxable year. See sec. 1.461-1(a)(2) and sec. 1.446-1(c)(1)(ii), Income Tax Regs. Further on this point, see First Federal Savings & Loan Association of Temple v. United States, supra at 236-238. *215 Petitioner has regularly employed the accrual method of accounting for keeping its books and computing its taxable income. Consistent with the accrual method of accounting, it currently deducts its commission expenses for income tax purposes. Petitioner's financial books and records reflect the entire amount of commissions incurred and paid by it during a taxable year. While petitioner treats the commissions differently in compiling its financial records, the Internal Revenue Code imposes no absolute requirement that petitioner's treatment of the commissions for financial accounting purposes conform to the way it treats such expenses for tax purposes. Sec. 1.446-1(a)(4), Income Tax Regs. Cf. section 472(c) and section 1.472-2(e), Income Tax Regs., which require that taxpayers employing a LIFO inventory method for tax purposes use the same method in inventorying their goods for purposes of reports or statements to shareholders, partners, or other proprietors, or to beneficiaries, or for credit purposes. We note that petitioner uses the accrual method for tax and financial purposes, but that only the treatment of the commissions paid is different. The essential and pivotal question *216 here is whether respondent may require taxpayers to report (for tax purposes) in absolute conformity with financial reporting. Admittedly, in the broad sense, petitioner uses the accrual method for financial and tax reporting purposes. Also, petitioner's accrual of all commissions paid complies with the requirements of section 162 and the all-events test. It follows that petitioner's financial reporting treatment of the commissions would also meet the tax reporting requirement. In this setting we must decide whether a taxpayer has a choice of reporting alternatively acceptable approaches or whether section 446(a) requires absolute conformity. Implicit in section 446(a) is the concept that variations will exist between financial and tax items. We disagree with respondent that those variations may exist only when statutorily required or when respondent may otherwise require under his section 446 authority. We hold that a taxpayer may make the type of choice made here so long as other [9] Code requirements are met, the taxpayer's overall method of accounting is in conformity, and the method or reporting clearly reflects income for tax purposes. *217 Moreover, petitioner's books and records include sufficient records and data to readily permit a reconciliation of any differences in treatment of its commission expenses on its tax books and financial books. In Public Service Co. of N.H. v. Commissioner, 78 T.C. at 452-453, we stated, albeit in dicta, that: [Respondent] has taken the position that a taxpayer's "books" for purposes of section 446 include "a reconciliation of any differences between [the taxpayer's regular books of account] and his return." Sec. 1.446-1(a)(4), Income Tax Regs. Moreover, respondent has ruled that a taxpayer may employ distinct tax and financial treatments for specific items such as accelerated depreciation (see Rev. Rul. 59-389, 1959-2 C.B. 89), and, for a variety of items such as tax-exempt income, disparate tax and financial reporting is inevitable. See generally 4 B. Bittker, Federal Taxation of Income, Estate and Gifts, pars. 105.1.5-105.1.7 (1981); Falk, "Tax Accounting and Business Accounting: How to Maintain Two Sets of Books to the Satisfaction of the Treasury," 28 N.Y.U. Inst. on Fed. Tax. 19 (1970). * * *
Based on the foregoing, *218 we hold that the conformity requirement of section 446(a) and section 1.446-1(a)(1), Income Tax Regs., does not, in and of itself, preclude petitioner's treatment of commission expense for tax purposes. C. Clear Reflection of Income - Mismatching of Income and Expenses
Having concluded that the conformity requirement of section 446(a) does not preclude the deductibility of the commission expense, we consider respondent's argument that petitioner's method of accounting fails to clearly reflect taxable income. Because the income from book sales is accrued when the books are shipped and commissions are paid when the orders are received, respondent argues there is an obvious mismatching of the income with the related commission expenses. Whether an accounting method materially distorts or clearly reflects a taxpayer's income is a question of fact. Resnik v. Commissioner, 555 F.2d 634, 636 (7th Cir. 1977), affg. 66 T.C. 74 (1976); Packard v. Commissioner, 85 T.C. 397, 432 (1985); Van Raden v. Commissioner, 71 T.C. 1083, 1104 (1979), affd. 650 F.2d 1046 (9th Cir. 1981); Sandor v. Commissioner, 62 T.C. 469, 484 (1974), *219 affd. per curiam 536 F.2d 874 (9th Cir. 1976). Under this material distortion standard, it appears that to be objectionable the resulting or possible distortion caused in a taxpayer's taxable income must be material. Taxpayers bear the burden of establishing that respondent, in changing the taxpayer's accounting method pursuant to section 446(b), abused his discretion. Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979). Under the material distortion standard, however, some distortion may be permitted. Perfect or exact matching of income and expenses is not required in each and every case. See Zaninovich v. Commissioner, 616 F.2d 429, 433 (9th Cir. 1980), revg. 69 T.C. 605 (1978); Osterloh v. Lucas, 37 F.2d 277, 278 (9th Cir. 1930), affg. 13 B.T.A. 713 (1928); cf. Hillsboro National Bank v. Commissioner, 460 U.S. 370 (1983) (tax benefit rule does not permit rematching of properly recognized income with properly deducted expenses). In Zaninovich, the Circuit Court allowed the deduction of the amount paid, even though one-twelfth was *220 attributable to the year of payment and eleven-twelfths was attributable to the year after payment. In rejecting the Commissioner's position, the court pointed out that, in the final year, it would result in a deduction of eleven-twelfths of a prior year payment in a year with no payments or income. In this case petitioner's spread between payment of commissions and receipt of income is not necessarily as long as 11 months in the case of schoolbooks and may be as long as 23 months in the case of bereavement books. We note, however, that in the case of bereavement books, no activity may occur in the year after payment. Respondent relies upon Shelby Salesbook Co. v. United States, 104 F. Supp. 237 (N.D. Ohio 1952), involving similar facts to those under consideration here. In Shelby Salesbook Co. the taxpayer generally employed the accrual method of accounting but did not currently deduct all of the commissions accrued or paid with respect to its sales of books and other business forms. In the sales business it conducted, it credited and paid its salesmen commissions only after the orders they submitted were deemed "prompt", i.e., when shipment would be *221 made within 60 days. On its tax returns it reported as income the selling price of the goods shipped and billed. It deducted only the corresponding commissions that had been earned by salesmen on such orders. In its refund suit, the taxpayer argued that it should have deducted not only the commissions on goods shipped during the years in issue, but also the commissions paid or credited to its salesmen on orders not shipped until a following year. The Government contended, and the court agreed, that no deduction should be allowed for commissions on goods not shipped. The District Court reasoned that the expense had to be matched against the income it helped to produce, and that only by requiring such matching would income be clearly reflected. In reaching its conclusion, the District Court in Shelby Salesbook Co. v. United States, supra at 239, relied upon the Supreme Court's observation in United States v. Anderson, 269 U.S. 422, 440 (1926), that the accrual method of accounting for tax purposes -- was to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against *222 income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period; and indeed, to require the tax return to be made on that basis, if the taxpayer failed or was unable to make the return on a strict receipts and disbursement basis. * * *
Extrapolating from this statement, the District Court reasoned that only by having the expense reported in the same year as the corresponding income it helped produce would the taxpayer-sales company's income be clearly reflected. We do not find the District Court's rationale in Shelby Salesbook Co. v. United States, supra, to be persuasive or compelling authority. In its proper perspective, the matching concept is a desired goal of financial accounting rather than an overriding rule of tax accounting. See United States v. Hughes Properties, Inc., 476 U.S. 593, 603-604 (1986); Marquardt Corp. v. Commissioner, 39 T.C. 443, 453-455 (1962); Eastman Kodak Co. v. United States, 209 Ct. Cl. 365, 534 F.2d 252, 255-256 (1976). Commissions paid by a dealer in connection with *223 sales of its inventory are ordinary and necessary business expenses. See sec. 1.263(a)-2(e), Income Tax Regs. Respondent concedes that under an accrual method of accounting, deduction of the disputed commission expenses satisfies the all-events test. He also acknowledges that where dealers elect to report their sales income for tax purposes under the installment method, they nevertheless have been allowed to currently deduct their commission expenses. See Frankenstein v. Commissioner, 31 T.C. 431, 436 (1958), affd. 272 F.2d 135 (7th Cir. 1959); Cooper Communities, Inc. & Subsidiaries v. United States, 678 F. Supp. 1408 (W.D. Ark. 1987); see also sec. 453(a), S. Rept. No. 96-1000, 1980-2 C.B. 494, 507. [10] He suggests, however, that any such mismatching is attributable to the dealer's use of the statutorily permitted installment method. Incidentally, while petitioner did not elect the installment method, respondent did not change the method of accounting under which petitioner accrued its income from book sales. See sec. 1.446-1(c)(1)(ii), Income Tax Regs.; Hallmark Cards, Inc. v. Commissioner, 90 T.C. 26, 35 (1988). *224 The disputed commissions are not prepaid expenses. [11] They do not create "an asset having a useful life which extends substantially beyond the close of the taxable year". Sec. 1.461-1(a)(2), Income Tax Regs. See Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 284-287 (1944). In the case of non-dealers, *225 commissions and other selling expenses, while classified as capital expenditures, are treated as being offsets to the sales price realized. They are not expenditures which create an asset. Sec. 1.263(a)-2(e), Income Tax Regs.; Baltimore & Ohio R.R. v. Commissioner, 78 F.2d 460, 463 (4th Cir. 1935), affg. 29 B.T.A. 368 (1933); Simmons Co. v. Commissioner, 33 F.2d 75, 76 (1st Cir. 1929), affg. 8 B.T.A. 631 (1927). Notwithstanding this, respondent intimates that petitioner's payment of the commissions results in its acquisition of certain intangible contract rights having a useful life substantially beyond the close of the taxable year. He asserts that "Here, Fidelity had paid an expense which related to a finite income stream." Under the sponsorship contracts, petitioner, in many cases, has certain contractual rights to receive payments over the 2-year period of a sponsorship contract. That is not a sufficient reason, standing alone, to classify the commissions incurred here as a capital or amortizable expenditure. *226 The approach argued for by respondent could distort petitioner's taxable income. The disputed expenses were not only incurred but actually paid during the taxable year for which they were deducted. This is not a case where accrued expenses "significantly exceed the cash payment obligations of the * * * [taxpayer], and where the only event that triggers the * * * [taxpayer's] obligation to make * * * payments consistent with the * * * accrual * * * is an event which may never happen and over which the * * * [taxpayer has] unilateral control." See Prabel v. Commissioner, 91 T.C. 1101, 1118 (1988). The sales representatives receive commissions shortly after acknowledgement of sales and have fully performed as of the time petitioner's liability to pay becomes fixed. [12]
*227 Because petitioner's method of accounting is an acceptable method which clearly reflects its income, respondent, under section 446(b), is not allowed to require petitioner to change its method of accounting. Prabel v. Commissioner, supra at 1112; Hallmark Cards, Inc. v. Commissioner, supra at 31. We hold that respondent abused his discretion in changing petitioner's method of accounting so as not to permit petitioner's commission expenses to be currently deducted. Because we hold that respondent improperly changed petitioner's method of accounting, we need not reach the issue of whether an adjustment to petitioner's 1983 taxable income should be made under section 481. Decision will be entered for petitioner. Footnotes
1. All section references, unless otherwise indicated, are to the Internal Revenue Code in effect for the taxable year in issue. ↩
2. For purposes of convenience, Fidelity Associates, Inc., will be referred to as petitioner.↩
3. The parties have described these books as bereaved books. For purposes of this opinion we shall refer to them as bereavement books.↩
4. Although the agreement was oral, the parties have stipulated to the facts regarding the commission arrangement and regarding petitioner's payment of commissions with respect to the sponsorship contracts.↩
5. As noted, in Bittker, Federal Taxation of Income, Estates, and Gifts, par. 105.1.6, at 105-18 to 105-19 (1981): The judicial testimonials to the broad powers of the IRS must be qualified in one fundamental respect: An accounting method that is explicitly authorized or prescribed by Congress cannot be rejected even if the IRS, on sober evaluation of its impact, concludes that it does not clearly reflect income. * * * Except for this qualification, it is difficult to identify any authoritative standard by which to judge the propriety of an IRS determination that a taxpayer's accounting method does not "clearly reflect income." The statutory phrase is not only hopelessly vague but circular to boot, since the "income" that must be clearly reflected by the taxpayer's accounting method is taxable income, not financial, economic, or any other variety of income. In short, income is clearly reflected by an accounting method if the ultimate result of using the method is taxable income. Another way of putting the point is that an accounting method clearly reflects income if (and only if) it treats relevant items (as respects inclusion or deduction from income and their temporal allocation) in the manner prescribed by the Code, regulations, cases, and rulings. If the standards established by these non↩-accounting rules leave room for a choice between two or more ways of treating particular items, income is clearly reflected by an accounting method under which one of the permissible options is consistently chosen. * * * [Fn. ref. omitted.]
6. Sec. 1.263(a)-2, Income Tax Regs., in pertinent part, states: The following paragraphs of this section include examples of capital expenditures: * * * (e) * * * Commissions paid in selling securities are an offset against the selling price, except that in the case of dealers in securities such commissions may be treated as an ordinary and necessary business expense.↩
7. We also note that inclusion of such expenses in inventoriable costs is not required under either the full absorption regulations or under the uniform capitalization rules of sec. 263A (as enacted by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, and generally effective for taxable years beginning after Dec. 31, 1985). See sec. 1.471-11(c)(2)(ii)(c), Income Tax Regs., and sec. 1.263A-1T(b)(2)(v)(A), Temporary Income Tax Regs., 52 Fed. Reg. 10060 (Mar. 30, 1987), and 52 Fed. Reg. 29378↩ (Aug. 7, 1987).
8. Sec. 1.446-1(c)(1)(ii), Income Tax Regs., in pertinent part, states: (ii) Accrual method.↩ Generally, under an accrual method, income is to be included for the taxable year when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy. * * * The method used by the taxpayer in determining when income is to be accounted for will be acceptable if it accords with generally accepted accounting principles, is consistently used by the taxpayer from year to year, and is consistent with the Income Tax Regulations. For example, under an accrual method, a taxpayer engaged in manufacturing may account for the sale of an item when the item is shipped, when the item is delivered, when the item is accepted, or when title to the item passes to the purchaser, whether or not billed, depending upon the method regularly employed in keeping the taxpayer's books * * *.
9. Such as meeting the sec. 162 requirements in this case.↩
10. Sec. 453(a) authorized the Treasury to promulgate regulations permitting persons who regularly sold personal property under the installment plan method to elect to return their income therefrom under the installment method. In explaining the provision, the Senate Report stated that it was not intended that any dealer in personal property who reported sales under the accrual method be required to change to the installment method. S. Rept. No. 96-1000, 1980-2 C.B. 494, 507. Subsequently, sec. 10202 of the Omnibus Budget Reconciliation Act of 1987, Pub. L. 100-203, 101 Stat. 1330, generally repealed use of the installment method for dealer dispositions occurring after 1987.↩
11. By way of analogy, in cases involving prepaid expenses this Court enunciated the following 3-prong test for determining the deductibility of prepaid items by cash method taxpayers, where the sole governing provisions are secs. 162 and 446(b): (1) An actual payment, as opposed to a mere refundable deposit, must have been made; (2) a substantial business reason must exist for making prepayment in the taxable year made; and (3) no material distortion must be caused in the taxpayer's taxable income in the year of the prepayment. Grynberg v. Commissioner, 83 T.C. 255, 264-267 (1984). In that case and earlier cases cited therein, the same tripartite test from Rev. Rul. 79-229, 1979-2 C.B. 210↩, has been adopted. In this case, the result would be the same, irrespective of whether the commissions were determined to be prepaid expenses.
12. Sec. 461(h), as added by sec. 91(a) of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 598, and as generally effective as to accruals of deductions after July 18, 1984, imposes the additional requirement of economic performance. While not a prerequisite to deduction of the disputed commission expenses for the taxable year in issue, it is interesting to note that under sec. 461(h)(2)(A)(i), where the liability involves the performance of services to the taxpayer, economic performance occurs as such services are provided.↩